**In re GOLDEN DISTRIBUTORS, LTD. and Capital Cigar & Tobacco Co., Inc., et al., Debtors.**

**GOLDEN DISTRIBUTORS, LTD.,**

v.

**Raymond GARCED, Individually and d/b/a American Tobacco, and Liberty Bag & Paper Co., Inc., Defendants.**

Bankruptcy Nos. 90 B 21146–90 B 21149 and 91 ADV. 6021.

United States Bankruptcy Court, S.D. New York.

Dec. 18, 1991.

See also 134 B.R. 750, 134 B.R. 760.

Summit Solomon & Feldesman, New York City, for debtors.

Finkel Goldstein Berzow & Rosenbloom, New York City, for defendants.

DECISION ON COMPLAINT TO RECOVER PROPERTY OF ESTATE AND MOTION TO BE RELIEVED AS COUNSEL TO THE DEFENDANTS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Golden Distributors, Ltd. ("Golden"), the debtor in this voluntary Chapter 11 case, has commenced this adversary proceeding to collect $201,769.06 from the defendants for goods sold and delivered. Golden alleges that the defendant Raymond Garced ("Garced") is personally liable for five checks totaling $107,525.30 which he drew on the account of Liberty Bag and Paper Co., Inc. ("Liberty") as payment for the goods but thereafter stopped payment. Golden argues that New York's U.C.C. § 3-403(2) imposes personal liability on a person who signs his own name to a corporate check without indicating that he is signing in a representative capacity. Liberty admits that it, as a corporate entity, owes Golden $151,043.48 asserting that it remitted payments of $49,861.04 to Golden. Golden contends that all payments were credited to the account of American Tobacco and Paper ("American Tobacco"), a trade name that Liberty uses. Garced argues that he is not personally liable as the maker of the checks because it was implicit in the course of conduct established between Golden and himself that liability would only be imposed on the corporation. This course of conduct, Garced argues, constitutes an exception to New York's U.C.C. § 3-403(2). The defendants' attorney moved to withdraw as counsel in this case because he has not been in contact with Garced for several weeks despite his efforts to reach him. The court granted this motion at the conclusion of the trial.

## PROPOSED FINDINGS OF FACT

1. On November 13, 1990, the debtor and its affiliated corporations, filed with this court petitions for reorganizational relief under Chapter 11 of the Bankruptcy Code and continued in possession and management of their businesses and properties pursuant to 11 U.S.C. §§ 1107 and

1108. The separate cases were consolidated for purposes of administration by an order of this court.

2. Golden is a wholesale distributor of cigarettes, candy, and other sundry products. A principal place of the debtor's business is located in Port Chester, New York.

3. Liberty is a New York corporation with an office at 748 Liberty Avenue, Brooklyn, New York. Liberty operates at this address a store under the trade name American Tobacco and Paper. Liberty has not filed with the Secretary of State a certificate setting forth the name or designation under which business is conducted as required by New York's General Business Law § 130(1)(b).

4. Garced is a New York resident and was a shareholder of Liberty during its association with Golden. Garced failed to appear as a witness in this proceeding in violation of a subpoena issued by the clerk of the court. Counsel for Garced denies that Garced is personally liable for the debts of Liberty or American Tobacco.

5. American Tobacco purchased cigarettes and sundry items from Golden on a regular basis pursuant to specific credit terms. Golden maintained an account on its books for American Tobacco.

6. Golden delivered goods to American Tobacco for credit on various occasions in 1990 and afterward sent American Tobacco invoices reflecting the amounts due and owing. Golden asserts that neither Liberty nor American Tobacco paid certain invoices totaling $129,063.76.

7. Because it had not been paying its invoices, in the fall of 1990 Golden required American Tobacco to pay for its shipments with cash or check on delivery. In November 1990, Golden made five deliveries to American Tobacco for which Garced, at the time of each delivery, tendered a check drawn on Liberty's account. The checks totaled $107,525.30. After Golden filed its bankruptcy petition, Garced stopped payment on the checks causing Golden to incur a service fee of $30.00 for each stopped check. At this point, Liberty's outstanding account balance with Golden was $236,-769.06.

8. Liberty admits that it owes Golden $151,043.48. Liberty contends that it has already remitted $49,861.04 in cash and checks to Golden in satisfaction of its indebtedness. It alleges that this amount is comprised of three certified checks tendered to Golden, a cash payment received by a Golden employee, and various payments made to a Golden representative. Golden credited all payments to American Tobacco's account.

9. On November 29, 1990, Garced tendered two certified checks drawn on Liberty's account in the amounts of $12,814.54 and $5,000.00 to Golden. On December 4, 1990, Garced remitted a certified check drawn on Liberty's account for $9,378.00 to Golden. These certified checks are numbered 1533, 1534 and 1551, respectively. Defendant's Exhibit D. The back of each check indicates that it was deposited by Golden in a Citibank account. Golden's account record reflects each of these payments. Plaintiff's Exhibit 6.

10. The defendants introduced a receipt allegedly signed by Golden's driver, Franco Solozano ("Solozano"), which states that he accepted $10,000.00 in cash from Liberty on December 3, 1990. However, Solozano testified in this case and denied that he received the money, stating that although his name appears on a receipt, he did not sign it. Solozano's testimony is corroborated by Golden's daily manifest sheet, a business record which sets forth the accounts visited on each day. The manifest sheet does not indicate that Liberty, American Tobacco, or Garced were visited by a Golden representative on December 3, 1990.

11. A Driver Collect receipt dated December 14, 1990 indicates that a Golden representative collected $2,325.34 in cash and $2,674.66 in checks from Garced. Golden only credited American Tobacco's account with $4,831.50 for that date. There is a $168.50 unexplained discrepancy between the receipt and Golden's records.

12. A Driver Collect receipt dated December 17, 1990 indicates that Garced remitted $4,115.73 in checks and $1,052.77 in

cash to a representative of Golden. A receipt dated December 21, 1990 shows that a Golden representative collected $2,500.00 in checks from Garced. Golden duly credited American Tobacco's account with these payments. Plaintiff's Exhibit 6.

13. On or about March 7, 1990, Garced tendered a check drawn on Liberty's account for $35,000.00 to Golden which Golden posted to American Tobacco's account, thereby reducing the outstanding account balance on Golden's books to $201,769.06. In its complaint, Golden seeks to recover this amount from Liberty based on Liberty's failure to pay for goods sold and delivered. Of this $201,769.06, Golden seeks to hold Garced personally liable for $107,-525.30 plus service charges for the five checks which Garced tendered to Golden in November, 1990 and thereafter stopped. Golden argues that Garced is personally liable because he failed to indicate that he was signing the checks as a representative of Liberty.

## DISCUSSION

[1] Liberty is liable for the debts of American Tobacco. Liberty, a duly licensed corporation under New York law, does business under the trade name American Tobacco even though Liberty has not filed a certificate designating the trade name as required by section 130 of New York's General Business Law. N.Y.Gen. Bus.Law § 130 (McKinney 1964). The defendants refer to Liberty as "d/b/a American Tobacco and Paper." *Amended Answer* at ¶ 6. The law is clear that

> The designation "d/b/a" means "doing business as" but is merely descriptive of the person or corporation who does business under some other name. Doing business under another name does not create an entity from the person operating the business. The individual who does business as a sole proprietor under one or several names remains one person, personally liable for all his obligations. So also with a corporation which uses more than one name.

*Duval v. Midwest Auto City, Inc.*, 425 F.Supp. 1381 (D.Nebraska 1977), *aff'd*, 578 F.2d 721 (8th Cir.1978).

Liberty is indebted to Golden in the amount of $201,769.06. Liberty contends that it owes Golden $151,048.43, asserting that it remitted various payments totaling $49,861.04 to Golden which were not credited to American Tobacco's account. However, Golden established at the trial that it credited all payments to American Tobacco's account. Golden credited American Tobacco's account with the certified checks tendered by Garced on November 29 and December 4, 1990. Golden also posted payments collected by drivers on December 17 and 21, 1990 to American Tobacco's account. On December 14, 1990 Golden credited American Tobacco's account with $4,831.50. However, the Driver Collect receipt introduced by the defendants dated December 14, 1990 indicates that $5,000.00 in cash and checks was received from Garced on that date. This discrepancy was not explained at the trial. Golden's record of payment was substantiated by Evelyn Rock, a former credit manager at Golden, and Ron Wertheimer, Golden's comptroller, who testified at the trial that Golden's records were accurate. No one testified on the defendants' behalf as to this issue.

Golden acted properly by not crediting American Tobacco's account with $10,-000.00 in cash which the defendants allege was accepted at American Tobacco by Golden's driver, Solozano, on December 3, 1990. At the trial, Solozano denied that he received any money on that date and stated that the signature on Liberty's receipt was not his. Furthermore, Golden's route sheet for that date does not indicate that Solozano visited American Tobacco on that date.

Raymond Garced is personally liable for $107,525.30 plus service fees for checks drawn on Liberty's account in November, 1990 on which he subsequently issued stop orders. New York's Uniform Commercial Code § 3–403(2) provides as follows:

> An authorized representative who signs his own name to an instrument
>
> (a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

N.Y. U.C.C. Law § 3–403(2) (McKinney 1964). This statute must be strictly construed as imposing personal liability on a maker of a check who fails to indicate his representative capacity on the instrument. *Carador v. Sana Travel Service, Ltd.*, 700 F.Supp 787 (S.D.N.Y.1988), *aff'd*, 876 F.2d 890 (2d Cir.1989); *Rotuba Extruders, Inc. v. Ceppos*, 46 N.Y.2d 223, 413 N.Y.S.2d 141, 385 N.E.2d 1068 (1978); *Tropical Ornamentals, Inc. v. Visconti*, 115 A.D.2d 537, 495 N.Y.S.2d 729 (1985); *Financial Associates v. Impact Marketing, Inc.*, 90 Misc.2d 545, 394 N.Y.S.2d 814 (1977). "While this rule may seem harsh, the rule is in keeping with the general intent and purpose of the negotiable instrument law to protect holders in due course. Commercial paper must be permitted to be freely negotiable without undue risk." *Financial Associates*, 90 Misc.2d at 546–47, 394 N.Y.S.2d 814.

The checks in question that Garced signed do not indicate that he was acting on behalf of Liberty. Furthermore, Garced has not shown that the statutory exception applies. He did not demonstrate that there was an understanding, implicit in his course dealing with Golden, that he was acting in a representative capacity. Thus, Garced is personally liable for the amount of the checks and the service charges imposed. It should be noted that the court is not commenting on any indemnification claim that Garced may assert against Liberty because no such claim was raised at the trial.

PROPOSED CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). The debtor's suit against these defendants is a non-core proceeding within the meaning of 28 U.S.C. § 157(c)(1). This is a civil proceeding which neither arises under title 11 nor arises in a case under title 11, but is related to a case under title 11, as authorized under 28 U.S.C. § 1334(b). Accordingly, the proposed findings of fact and conclusions of law are submitted to the district court for a final order or judgment to be entered by the district court after considering the proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected as expressed in 28 U.S.C. § 157(c)(1).

2. Liberty is liable for the debts of American Tobacco because the corporation was doing business under that name.

3. Liberty owes Golden $201,057.36 because it failed to pay for goods sold and delivered by Golden. All proper payments made from Liberty to Golden were duly credited to the account of American Tobacco.

4. Under N.Y. U.C.C. § 3–403(2), Raymond Garced is personally liable for the five checks which he drew on Liberty's account and tendered to Golden and for the service fees Golden incurred, totaling $107,675.30, because he did not indicate on the checks that he was signing them in a representative capacity.