In re **GOLDEN DISTRIBUTORS, LTD.,** **and Capital Cigar and Tobacco Company, Incorporated, et al., Debtors.**

**GOLDEN DISTRIBUTORS, LTD., Plaintiff,**

v.

**SAVE ALL TOBACCO, INC. and Bob Keller, Defendants.**

**Bankruptcy Nos. 90 B 21146 to 90 B 21149 and 91 Adv. 6127.**

United States Bankruptcy Court, S.D. New York.

Dec. 27, 1991.

Summit Solomon & Feldesman, New York City, for debtors.

Spota, O'Rourke & Ammerman, Hauppauge, N.Y., for defendants.

## DECISION ON COMPLAINT TO RECOVER PROPERTY OF ESTATE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Golden Distributors, Ltd. ("Golden"), the debtor in this voluntary Chapter 11 case, has commenced this adversary proceeding to collect $301,803.59 from the defendants for goods it sold and delivered to the defendants. A default judgment has been entered against the corporate defendant, Save All Tobacco, Inc. ("Save All"), for $301,803.59 and interest. Golden seeks to have the defendant, Bob Keller ("Keller"), held personally liable for the entire debt because it alleges that Keller is a shareholder of Save All and that the facts establish a basis to pierce the corporate veil. Golden also asserts that Keller is personally liable for twelve corporate checks totaling $138,584.40 that he drew on the Save All's account in payment for the goods. Several checks were returned to Golden by Save All's bank because the account lacked sufficient funds to cover them. Other checks were returned because Golden negotiated them after Save All's account was closed. Golden argues that New York's U.C.C. § 3–403(2) imposes personal liability on a person who signs his own name to a corporate check without indicating that he is signing in a representative capacity.

Keller contends that he is not personally liable for Save All's entire indebtedness for the reason that there is no basis to pierce the corporate veil. Keller also argues that he is not personally liable as the maker of the checks in question for two reasons. First, Keller asserts that it was implicit in the course of conduct established between

Golden and himself that liability would be imposed only on the corporation. This course of conduct, Keller argues, constitutes an exception to N.Y.U.C.C. § 3–403(2). Keller also argues that Golden is not entitled to the protection of N.Y.U.C.C. § 3–403(2) because it is not a holder in due course of a negotiable instrument pursuant to N.Y.U.C.C. § 3–305(2) for the reason that some of the checks were post-dated. In his answer, Keller asserts a counterclaim against Golden for damages based on *prima facie* tort. The court dismissed this claim from the bench at the conclusion of the trial. Golden seeks sanctions against Mr. Keller's attorney under Rule 11 of the Federal Rules of Civil Procedure, alleging that the counterclaim was frivolous.

## PROPOSED FINDINGS OF FACT

1. On November 13, 1990, the debtor and its affiliated corporations, filed with this court petitions for reorganizational relief under Chapter 11 of the Bankruptcy Code and continued in possession and management of their businesses and properties pursuant to 11 U.S.C. §§ 1107 and 1108. The separate cases were consolidated for purposes of administration by an order of this court.

2. Golden is a wholesale distributor of cigarettes, candy, and other sundry products. A principal place of the debtor's business is located in Port Chester, New York.

3. Save All is a New York corporation with an office at 150 Morris Avenue, Holtsville, New York. Save All was in the business of distributing cigarettes, candy, and other items that it purchased from Golden, to convenience and other stores. Save All ceased operations in March, 1991.

4. Keller was an employee of Save All who was authorized to sign corporate checks. Keller testified that he ordered goods for Save All from Golden and drew corporate checks. His wife, Eileen Keller, is the President of the corporation and owns all of the outstanding shares of stock.

5. Save All had formerly been buying goods from Valley Stream, a distributorship that Golden acquired. After Golden acquired the Valley Stream business, Save All purchased merchandise from Golden on a regular basis pursuant to specific credit terms.

6. On various occasions in 1990 and 1991, Golden delivered goods to Save All on credit for which it has not been paid. The parties have stipulated that the amount of principle indebtedness is $301,803.59. A default judgment of $322,052.04 reflecting this amount plus costs and interest was entered against Save All and Keller on November 22, 1991. On December 10, 1990, the default judgment against Keller was vacated by this court and on December 20, 1991, a trial was held before this court on the merits of the case.

7. Golden alleges that Keller is personally liable for all of Save All's outstanding obligations because there are sufficient grounds to pierce the corporate veil. Keller argues that the corporate veil should not be pierced because it is clear from the facts of the case that, as an individual employed by Save All, he is distinct from the corporation.

8. Keller testified that he did not know whether Save All maintained corporate books. He stated that Save All never held any shareholder meetings nor did the corporation pay out dividends. Keller also testified that neither he nor his wife contributed any money to Save All when the corporation was formed.

9. Golden also seeks to hold Keller personally liable under U.C.C. § 3–403(2) for checks that he drew on Save All's account which were dishonored by Save All's bank. Golden had been delivering merchandise to Save All on credit on various occasions in 1990. Beginning in January of 1991 Golden required Save All to pay for its shipments on delivery by cash or check because Save All had violated its credit terms. At this point, Save All owed Golden approximately $163,219.29.

10. Keller gave Golden's drivers, on various deliveries, a series of twelve checks which he signed and were drawn on a corporate checking account maintained by Save All at Marine Midland Bank, N.A.

("Marine Midland"). The checks totaled $138,584.40. Eight checks totaling $86,-836.11 were returned to Golden by Marine Midland because the account lacked sufficient funds. The bank returned four checks totaling $51,748.29 which were tendered by Keller in February, 1991, because Save All's account had already been closed. Golden presented these checks to its bank, Citibank, N.A., on April 24, 1991, more than thirty days after the checks were dated. Eileen Keller closed Save All's Marine Midland account on June 6, 1991.

11. Golden argues that Keller is personally liable for these dishonored checks under U.C.C. § 3–403(2) because he did not indicate that he was signing the instruments as a representative of Save All. Keller asserts that he is not personally liable as the maker of the checks because it was implicit in the course of conduct established between Golden and himself that liability would be imposed solely on the corporation. This course of conduct, Keller asserts, is an exception to U.C.C. § 3–403(2). Keller testified that it was understood between Valley Stream and himself that he signed Save All's checks in a representative capacity. This understanding, Keller argues, was carried over to Golden when Golden acquired Valley Stream.

12. Ira Gaffarian ("Gaffarian"), a salesman employed by Valley Stream and then by Golden, handled the Save All account for both distributorships. Gaffarian testified that both Valley Stream and Golden maintained an account on their books under the corporate name Save All. He further testified that at both Valley Stream and Golden, Save All was the customer and it was that it was understood between Keller and each distributorship that Keller would not be personally liable for Save All's obligations. Presently, Gaffarian works for a competitor of Golden.

13. Jeffrey Horn ("Horn"), formerly a credit manager at Golden, testified that Golden carried on its books an account under Save All's name and that no account existed under Keller's name. Horn also testified that there was no express agreement that Keller would not be personally

liable for corporate checks. However, Horn acknowledged that he had no personal knowledge of the status of Save All's account during a large part of the relevant period of time because his responsibilities in the credit department expanded and he no longer directly supervised Save All's account. Horn is presently a vice president of Golden.

14. Keller asserted a counterclaim against Golden alleging that Golden committed a *prima facie* tort by maliciously serving a complaint on him in this action. The counterclaim was dismissed at the conclusion of the trial. Golden seeks to sanction Keller's attorney under Rule 11 of the Federal Rules of Civil Procedure for bringing a frivolous claim.

## DISCUSSION

### *Piercing the Corporate Veil*

■ Golden cannot pierce Save All's corporate veil and hold Keller personally liable for Save All's debts. Courts are reluctant to overlook the corporate form and the burden of proof rests with the party seeking to disregard the formally incorporated entity. *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 683 (4th Cir.1976); *Establissement Tomis v. Shearson Hayden Stone*, 459 F.Supp. 1355, 1365 (S.D.N.Y.1978); *In re G & L Packing Co., Inc.*, 20 B.R. 789, 804, 805 (Bankr.N.D.N.Y.1982) *aff'd*, 41 B.R. 903 (N.D.N.Y.1984); *Matter of Typhoon Industries, Inc.*, 6 B.R. 886, 890 (Bankr. E.D.N.Y.1980). Thus, in this case, Golden has the burden of showing that Save All's corporate veil should be pierced. Golden has failed to sustain this burden.

"To disregard the corporate form, it must be established not only that an individual controlled a corporation, but also that the corporation was used for the transaction of the shareholder's personal business. (See *Port Chester Elect. Constr. Corp. v. Atlas*, 40 N.Y.2d 652, 389 N.Y.S.2d 327, 357 N.E.2d 983)." *Weis v. Selected Meat Packers, Inc.*, 91 A.D.2d 1085, 1086, 458 N.Y.S.2d 313 (1983). In the present case, Golden established that Keller supervised Save All's operations. Keller placed

orders with Golden on Save All's behalf, made sales, drew corporate checks and managed Save All's business. However, Golden failed to establish that Keller was at any time a shareholder of Save All. In fact, Keller was only an employee of the corporation who was authorized to sign checks. His wife was Save All's president and sole shareholder. Golden presented evidence at the trial that there was a complete disregard of corporate formalities in the operation of Save All. Stock was never issued, shareholders and directors meetings were never held, and no dividends were distributed. When these factors are present, there may be a basis for piercing the corporate veil. Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 53 (2d Cir.1984); Establissement Tomis, 459 F.Supp. at 1365. As a mere employee, Keller had no control over these corporate functions. Compliance with corporate formalities is the responsibility of a corporation's directors and officers. N.Y.Bus. Corp.Law §§ 701 and 715 (McKinney's 1986). Keller cannot be held accountable for disregarding corporate formalities because, as an employee of Save All, he had no duty and no legal right to act in the capacity of a director or an officer.

### Liability For Dishonored Checks

■ Keller is not personally liable for $138,584.40 for the checks he drew on Save All's account which were subsequently dishonored. New York's Uniform Commercial Code § 3–403(2) provides as follows:

An authorized representative who signs his own name to an instrument

(a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

N.Y.U.C.C.Law § 3–403(2) (McKinney 1964). This statute applies to negotiable instruments pursuant to N.Y.U.C.C. § 3–102(1)(e) which defines instrument for purposes of this statute as a negotiable instrument. N.Y.U.C.C. § 3–403(2) is strictly construed as imposing personal liability on a maker of a check who fails to indicate his representative capacity on the instrument. Carador v. Sana Travel Service, Ltd., 700 F.Supp. 787 (S.D.N.Y.1988), aff'd, 876 F.2d 890 (2d Cir.1989); Rotuba Extruders, Inc. v. Ceppos, 46 N.Y.2d 223, 385 N.E.2d 1068, 413 N.Y.S.2d 141 (1978); Tropical Ornamentals, Inc. v. Visconti, 115 A.D.2d 537, 495 N.Y.S.2d 729 (1985); Financial Associates v. Impact Marketing, Inc., 90 Misc.2d 545, 394 N.Y.S.2d 814 (1977). "While this rule may seem harsh, the rule is in keeping with the general intent and purpose of the negotiable instrument law to protect holders in due course. Commercial paper must be permitted to be freely negotiable without undue risk." Financial Associates, 90 Misc.2d at 546–47, 394 N.Y.S.2d 814.

The checks in question that Keller signed do not indicate that he was acting on behalf of Save All. However, Keller is not personally liable because he has shown that the statutory exception is applicable. He has proven that he had an agreement with Golden that he would not be personally liable for the checks. Specifically, Keller has shown that there was an understanding, implicit in the course of dealing with Valley Stream, and later with Golden, that he was acting in a representative capacity as an employee of Save All. This understanding, according to Gaffarian, was first established during Save All's relationship with Valley Stream and continued after Valley Stream was acquired by Golden. Although Horn, a vice president at Golden, testified that no express agreement existed, he admitted that during a large part of Save All's course of dealing with Golden, he had no personal knowledge of the status of Save All's account.

This case is distinguishable from the court's recent decision Golden Distributors, Ltd. v. Garced and d/b/a American Tobacco, and Liberty Bag & Paper Co., Inc., 134 B.R. 766 (1991). In that case, the

defendant, Raymond Garced, ("Garced") was held personally liable for checks he drew on a corporate account that were subsequently dishonored. The plaintiff, Golden, established a *prima facie* case that Garced was personally liable under N.Y.U.C.C. § 3–403 for signing corporate checks without indicating his representative capacity. Garced failed to appear at the trial and his attorney did not introduce any evidence that there was an understanding between Garced and Golden that he would not be held personally liable for the checks.

In this case, Keller presented substantial evidence that such an arrangement existed. Mr. Gaffarian, as a sales representative for Valley Stream and then Golden, had personal knowledge of the business relationship established between Keller and both organizations. He testified that it was understood between Keller and Valley Stream that Keller would not be personally accountable for checks he drew on Save All's account. This understanding, Gaffarian stated, continued after Golden acquired Valley Stream. Keller's testimony indicates that it was implicit in his course of dealing with Valley Stream and then Golden, that he would not be personally responsible for corporate checks that he signed. It was the intention of the parties that Save All, not Keller, would be responsible for the checks.

Horn, an employee of Golden's credit department, denied the existence of an express agreement between Golden and Keller that Keller would not be personally responsible for corporate checks. However, Horn admitted that he did not have first hand knowledge of Save All's relationship with Golden because his responsibilities in the credit department expanded as he was promoted from credit manager to a vice president. Because Horn was not familiar with Save All's account for the entire period in question, his testimony regarding any arrangement or course of conduct between Keller and Golden is at best based on incomplete knowledge. Accordingly, Save All alone is responsible for the dishonored checks.

The fact that Keller post-dated some of the checks in question has no bearing on the disposition of this case. N.Y.U.C.C. § 3–114(1) provides that "[t]he negotiability of an instrument is not affected by the fact that it is undated, antedated or postdated." N.Y.U.C.C. § 3–114(1) (McKinney's 1964). Because post-dated checks are negotiable instruments, N.Y.U.C.C. § 3–304(2) governs and the result of this case remains unchanged. *See In re J.I.C. Installations, Inc.*, 109 B.R. 43, 47 (Bankr.S.D.N.Y.1989).

## PROPOSED CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). The debtor's suit against these defendants is a non-core proceeding within the meaning of 28 U.S.C. § 157(c)(1). This is a civil proceeding which neither arises under title 11 nor arises in a case under title 11, but is related to a case under title 11, as authorized under 28 U.S.C. § 1334(b). Accordingly, the proposed findings of fact and conclusions of law are submitted to the district court for a final order or judgement to be entered by the district court after considering the proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected as expressed in 28 U.S.C. § 157(c)(1).

2. Keller is not responsible for Save All's indebtedness to Golden because there is no basis in this case for piercing the corporate veil to hold Keller, a mere employee of the corporation, personally liable for the obligations of the corporation.

3. Keller is not personally responsible under N.Y.U.C.C. § 3–403(2) for checks which he drew on Save All's account and tendered to Golden. Although Keller did not indicate on the checks that he was signing in a representative capacity, he established that he had an understanding with Golden that he would not be personally liable for corporate checks. This understanding constitutes an exception to the general rule under N.Y.U.C.C. § 3–403(3).

4. Golden's motion to sanction Keller's attorney is denied.