# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———————————

August Term, 2008

(Argued: October 10, 2008                                        Decided: May 11, 2009)

Docket No.  07-3206-bk (L); 07-3234-bk (CON)

IN RE: WILLIAM C. HALPIN, JR.

———————————

DONALD RAHM, LAWRENCE SPRARAGEN, JOSEPH GROSS, PHILIP PACIFICO, VINCENT J. DALEY, DONALD HART,

*Plaintiffs-Appellants*,

— v .—

WILLIAM C. HALPIN, JR.,

*Debtor-Appellee*.

———————————

Before:        B.D. PARKER, LIVINGSTON, *Circuit Judges*, CHIN, *District Judge*.*

———————————

Appeal from a judgment of the United States District Court for the Northern District of New York (Kahn, *J.*) holding that because the debtor's unpaid contributions to the funds are not "assets" under 29 U.S.C. § 1002(21)(A), its principal was not a fiduciary over those funds and therefore could not be held personally liable for their non-payment.  AFFIRMED.

———————————

WILLIAM POZEFSKY, Pozefsky, Bramley & Murphy, Albany, NY, *for Plaintiffs-Appellants.*

BRIAN P. ROHAN, Rohan & Associates, Albany, NY, *for Debtor-Appellee.*

*        The Honorable Denny Chin, of the United States District Court for the Southern District of New York, sitting by designation.

GREGORY F. JACOB, TIMOTHY D. HAUSER, NATHANIEL I. SPILLER, & BRUCE C. CANETTI, United States Department of Labor, *Amicus Curiae in Response to the Court's Request.*

_____

BARRINGTON D. PARKER, *Circuit Judge*:

This appeal presents a question of law: when do an employer's contributions to an employee benefit plan become "assets" under ERISA -- when the contributions become due, or only after they are paid? We hold that, in the absence of provisions to the contrary in the relevant plan documents, unpaid contributions are not assets of the plan.

## BACKGROUND

The relevant facts are undisputed. Debtor-Appellee William C. Halpin, Jr. was the President and sole shareholder of Halpin Mechanical & Electrical, Inc. ("HM&E"), an electrical contracting business. HM&E entered into a collective bargaining agreement and several subsidiary, plan-specific agreements (collectively, the "Plan Documents") with the International Brotherhood of Electrical Workers that required HM&E and its employees to contribute to various ERISA pension and benefit funds ("the Funds" or "plans"). The plans provide Union members with retirement income, apprenticeship training programs, health care, and other employee welfare benefits. Halpin himself was a participant.

Over time, HM&E failed to make employer contributions to the Funds as required by the Plan Documents.[1] During the same period, however, HM&E continued to pay Halpin's salary and

_____

[1]HM&E also failed to remit to the plans contributions that had been withheld from the wages of HM&E's employees. As Halpin and Plaintiffs-Appellants have reached a separate agreement regarding those contributions, however, HM&E's failure to remit these monies is not before us.

other corporate debts. Eventually, both Halpin and HM&E filed for protection under Chapter 7 of the Bankruptcy Code and sought to be discharged from debts that included the unpaid contributions.

During bankruptcy proceedings, Plaintiffs-Appellants, the trustees of the Funds, moved to have the debt for the delinquent employer contributions deemed non-dischargeable. The trustees contended that the unpaid employer contributions were plan assets, and that Halpin had exercised sufficient authority over them to have become a fiduciary under ERISA. *See* 29 U.S.C. § 1002(21)(A). They alleged that Halpin had breached his fiduciary obligations to the Funds by causing HM&E to pay other creditors while failing to make the required employer contributions to the Funds. According to the trustees, this conduct violated 29 U.S.C. § 1104(a)(1), which requires that a plan fiduciary "discharge his duties . . . solely in the interest of the [plan's] participants and beneficiaries." They therefore asserted that Halpin is personally liable for any losses to the plan resulting from this conduct. *See* 29 U.S.C. § 1109(a) ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . ."). Moreover, they contended that any resulting liability could not be discharged in bankruptcy pursuant to § 523(a)(4) of the Bankruptcy Code, which bars the discharge of debts arising from "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). In response, Halpin took the position that, because the unpaid employer contributions were not plan assets, he was not a fiduciary and consequently did not violate § 1104(a)(1). Accordingly, he claimed that he was not personally liable under § 1109(a) and that there was no debt to discharge.

The Bankruptcy Court denied the trustees' motion and the District Court affirmed,

3

concluding that the delinquent employer contributions were not plan assets and that Halpin was not a fiduciary. *See In re Halpin*, 370 B.R. 45, 48-50 (N.D.N.Y. 2007). The District Court, relying on the Plan Documents, found no indication that the unpaid employer contributions became assets of the plan before actually being paid to the plan. In the District Court's view, the governing documents did not give the plan a property interest in funds still held by the company, and consequently, the unpaid employer contributions were contractually due payments, not plan assets. *Id*. at 48-49. The District Court thus concluded that Halpin's failure to make the required contributions did not constitute a breach of a fiduciary duty as Halpin was not a plan fiduciary with regard to those contributions and that Halpin was therefore not personally liable for any loss resulting from his conduct. This appeal followed, and we affirm.

**DISCUSSION**

Under ERISA, "a person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). Therefore, to establish non-dischargeability under § 523(a)(4) the trustees must first show both that (1) the unpaid contributions were plan assets and (2) Halpin exercised a level of control over those assets sufficient to make him a fiduciary. We conclude that the unpaid contributions are not plan assets, and accordingly, we need not address the second part of this test.

As a question of law, we review *de novo* the issue of when unpaid contributions become assets under ERISA. *See Robert Lewis Rosen Assocs. Ltd. v. Webb*, 473 F.3d 498, 503 (2d Cir. 2007). ERISA itself does not define "assets." *See John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 89 (1993). Although the Department of Labor ("the

4

Department"), the agency charged with administering and enforcing Title I of ERISA, has officially issued a regulation that specifies when *employee* contributions become assets, *see* 29 C.F.R. § 2510.3–102, it has not issued a formal rule governing when *employer* contributions become plan assets.

In the absence of a formal rule or regulation, the Department has informally advised that "the assets of a plan generally are to be identified on the basis of ordinary notions of property rights under non-ERISA law." U.S. Dep't of Labor, Advisory Op. No. 93-14A (May 5, 1993). Assets will "include any property, tangible or intangible, in which the plan has a beneficial ownership interest," considering "any contract or other legal instrument involving the plan, as well as the actions and representations of the parties involved." *Id.* Applying this reasoning, the Department has taken the position through various informal agency pronouncements that "employer contributions become an asset of the plan only when the contribution has been made." Employee Benefits Sec. Admin., U.S. Dep't of Labor, *Field Assistance Bulletin 2008-1*, at 1-2 (Feb. 1, 2008); *see also* U.S. Dep't of Labor, Advisory Op. No. 93-14A (May 5, 1993); U.S. Dep't of Labor, Advisory Op. No. 2005-08A (May 11, 2005). "However, when an employer fails to make a required contribution to a plan in accordance with the plan documents, the plan has a claim against the employer for the contribution, and that claim is an asset of the plan." Employee Benefits Sec. Admin., U.S. Dep't of Labor, *Field Assistance Bulletin 2008-1*, at 2 (Feb. 1, 2008).

The Department's position is reflected in its procedures for enforcing ERISA as outlined in its amicus brief. When an employer misappropriates contributions that the *employee* has made to ERISA funds, the Secretary sues the employer directly. In contrast, when an *employer* fails to pay contributions, and the plan's fiduciaries do not pursue the claim, the Secretary typically sues

the fiduciaries for failing to enforce the plan's rights. Dep't of Labor Br. 14-15. In these cases, the Department's position is that the employer's failure to pay its contributions does not constitute a breach of fiduciary duty, and the Department lacks the authority to sue the employer directly.

We agree with the Department's interpretation that employer contributions become assets only after being paid.[2] Under "ordinary notions of property rights," if a debtor fails to meet its contractual obligations to a creditor, the creditor does not automatically own a share in the debtor's assets. The creditor, rather, has a "chose in action," an assignable contractual right to collect the funds owed by the debtor. *See Mexican Nat'l R.R. Co. v. Davidson*, 157 U.S. 201, 206 (1895). As one treatise explains, "[t]he terms 'choses in actions' and 'debts' are used by courts to represent the same thing when viewed from opposite sides. The chose in action is the right of the creditor to be paid, while the debt is the obligation of the debtor to pay." 63C *Am. Jur. 2d Property* § 22 (2008). Accordingly, the unpaid amounts are debts; they are not assets held in trust for the benefit of the creditor.

Trust law similarly supports this analysis. *Cf. Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110-11 (1989) (directing courts to consider trust law when "develop[ing] a federal common law of rights and obligations under ERISA-regulated plans." (internal quotation marks omitted)). Under well-settled principles of trust law, a debtor-creditor relationship is not a fiduciary relationship. *See* Restatement (Third) of Trusts § 5(k) & cmt. k (indicating that the relationship of a debtor to a creditor is not fiduciary in nature; rather the creditor has a personal

---

[2]Although our own caselaw independently supports this conclusion, we agree with the Department that its position is owed *Skidmore* deference. *See Skidmore v. Swift & Co.*, 323 U.S. 134 (1944); *see also Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 647 (8th Cir. 2007) (concluding that the "Secretary [of Labor]'s reasoning in its rulings regarding 'plan assets' [is] thorough, valid and particularly consistent").

claim against the debtor); *see also id.* at § 5(i) & cmt. i (stating that a contract to convey property does not give rise to a fiduciary relationship).  Indeed, the Restatement of Trusts explains that, with regard to amounts deducted by an employer for eventual contribution on behalf of an employee, "[a] trust arises as to the amounts deducted as soon as they are either set aside by the employer for the employees' purposes or paid over to another person for those purposes.  Until then, the employer's obligation is merely a debt, with the 'obligee' . . . holding a chose in action . . . in trust." *Id.* at § 5 cmt. k.

Applying these principles here, we hold that the unpaid employer contributions were not assets of the plans.  Although HM&E and the trustees were free to contractually provide for some other result, nothing in the Plan Documents indicates that they did so.  As the District Court pointed out, the assets of the Funds are described as "contributions *made* by Employers" (emphasis added), and the consequences for failing to pay the contributions include liability for the delinquent amounts, as well as penalties and interest.  This is the language of creditor and debtor; there is no indication that the parties sought to displace the ordinary presumption that an employer does not become a fiduciary of plan assets simply because it is under a contractual obligation to contribute to an employee benefit fund.

The trustees point to our decision in *United States v. LaBarbara*, 129 F.3d 81 (2d Cir. 1997), which, they argue, compels a different result.  There, the employer, Strathmore Concrete, was contractually obligated to contribute to the funds of the union LaBarbara headed.  Barone, Strathmore's owner, established Ju-Lin, a separate company which had no collective bargaining agreement with the union.  To avoid paying the union all of the funds Strathmore owed, Barone engaged in a scheme called "double-breasting."  Under this practice, employers received a

7

weekly check from Strathmore for working up to thirty hours, and the required contribution would be made to the funds.  But for all hours worked over thirty, employees would receive a paycheck from Ju-Lin and no contribution would be made to the fund.  Through this scheme Strathmore avoided paying substantial amounts due to the plans and LaBarbara accepted bribes to facilitate this practice.  Ultimately, LaBarbara was convicted of aiding and abetting Barone's embezzlement of ERISA funds.

On appeal LaBarbara contended that the monies owed to the plans were not plan assets until paid.  129 F.3d. at 88.  We stated that:

> Once wages were paid to [the Union's] members, Strathmore had
> contractual obligations to the Funds that constituted "assets" of
> the Funds by any common definition.  Certainly, an audit of the
> Funds would have to include such fixed obligations as assets.
> LaBarbara's acquiescence in the use of Ju-Lin as a vehicle to
> convert those assets to Barone and to conceal Strathmore's
> contractual obligations aided or abetted a violation of [18 U.S.C.]
> Section 664.[3]

*Id.*

The trustees argue that this language supports its position that the unpaid contributions are assets, but we believe they read *LaBarbara* too narrowly.  We did not find that the unpaid funds were plan assets; rather, we concluded that Strathmore's contractual obligation to the plan was a *chose in action,* and hence an asset.  Under this reasoning, we held that LaBarbara's crime

---

[3]The criminal statute cited here, 18 U.S.C. § 664, provides in pertinent part as follows:

> Any person who embezzles, steals, or unlawfully and
> willfully abstracts or converts to his own use of another,
> any of the . . . assets of any employee welfare benefit plan
> or employee pension benefit plan, or of any fund connected
> therewith, shall be fined under this title, or imprisoned not
> more than five years, or both.

was aiding and abetting Barone's concealment of the union's *right to collect funds* from Strathmore, not the concealment of any actual funds. Consequently, we see no tension between *LaBarbara*'s holding and our analysis here.

Not only does our caselaw support our conclusion here, but the Supreme Court has also strongly indicated that unpaid contributions are not plan assets. *See Jackson v. United States*, 129 S. Ct. 1307 (2009) (Mem.), *vacating and remanding* 524 F.3d 532 (4th Cir. 2008). In *Jackson*, the Fourth Circuit had held that employer contributions to ERISA plan "became assets of the ERISA plans when they became due and payable." *Jackson*, 524 F.3d at 542. The Court granted certiorari, and vacated and remanded the case for re-consideration in light of the position the Solicitor General articulated in its brief, a position that is congruent with ours here.

Previously, other circuits had reached the same result. In *In re Luna*, 406 F.3d 1192 (10th Cir. 2005), for example, the Tenth Circuit held that an employer's failure to make contributions to an ERISA plan created a creditor-debtor contractual relationship rather than a fiduciary relationship. *See id.* at 1198-1201; *see also In re M & S Grading, Inc.*, 541 F.3d 859, 865 (8th Cir. 2008) (concluding that when the employer "failed to make the payments to the plans, the unpaid contributions remained corporate assets and did not become assets of the plan"); *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003) (stating the rule that unpaid employer contributions are not fund assets unless the agreement clearly declares otherwise); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000) ("Until the employer pays the employer contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation . . . .").

From a policy standpoint, the Department of Labor correctly argues that the trustees'

9

position is not only against the weight of authority, but would also, if accepted, generate a number of undesirable consequences. First, as a general rule, undefined statutory terms should be construed in accordance with their common-law meaning. *See United States v. Shabani*, 513 U.S. 10, 13 (1994) (explaining that "absent contrary indications, Congress intends to adopt the common law definition of statutory terms"); *see also Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23 (1992); *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-40 (1989) (using the common-law definition of "employee" to interpret a provision of the Copyright Act). The term "assets" is critical to virtually all commercial transactions, and has a reasonably well understood meaning that is imbedded in the common law of contracts, property and trusts. A commonly understood definition of "assets" ensures that plans and related parties can look to an established body of rules and principles to structure relationships. Ascribing a different meaning to "assets" would deprive these relationships of an essential source of predictability and coherence.

Moreover, if unpaid employer contributions were plan assets, the employer would automatically become an ERISA fiduciary once it failed to make the payments. As such, the employer would owe the plan undivided loyalty at the expense of competing obligations – some fiduciary – to the business, and to others such as employees, customers, shareholders and lenders, and an undifferentiated portion of the companies assets would be held in trust for the plan. It is difficult to envision how proprietors could ever operate a business enterprise under such circumstances. It is highly unlikely – indeed inconceivable – that Congress intended such a result.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the judgment of the District Court.