07-2558-cv
Finkel v. Whiffen Electric Co.

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: May 8, 2009                              Decided: August 11, 2009)

Docket No. 07-2558-cv

GERALD FINKEL, as Chairman of the Joint Industry Board of the Electrical Industry,

*Plaintiff-Appellant*,

v.

JOSEPH ROMANOWICZ,

*Defendant-Appellee*,

WHIFFEN ELECTRIC CO., INC.

*Defendant*.

Before: CABRANES and WALLACE, *Circuit Judges.*[*]

Appeal from a judgment of the United States District Court for the Eastern District of New York (John Gleeson, *Judge*). Plaintiff Finkel challenges the District Court's dismissal of its claims against defendant Romanowicz after Romanowicz failed to plead or otherwise defend against plaintiff's complaint and plaintiff moved for a default judgment. According to plaintiff, the District Court erred in (1) holding that Romanowicz, an officer of a company that breached its duty to remit

---

[*] The Honorable J. Clifford Wallace, of the United States Court of Appeals for the Ninth Circuit, sitting by designation. The Honorable Sonia Sotomayor, originally a member of this panel, was elevated to the Supreme Court on August 8, 2009. The two remaining members of the panel, who are in agreement, have determined the matter. *See* 28 U.S.C. § 46(d); Local Rule 0.14(2); *United States v. Desimone*, 140 F.3d 457 (2d Cir. 1998).

1

contributions to various ERISA plans of which plaintiff was an administrator, was not liable for breach of fiduciary duty where plaintiff failed to establish defendant's status as an ERISA fiduciary within the meaning of 29 U.S.C. § 1002(21)(A); (2) not conducting a hearing prior to dismissing plaintiff's breach-of-fiduciary-duty claim; and (3) holding that, under section 3-403(2)(b) of New York's Uniform Commercial Code, defendant was not personally liable for checks he signed on behalf of the company that were dishonored due to insufficient funds in the company's checking account.  We hold that (1) plaintiff failed to establish defendant's status as an ERISA fiduciary because he did not allege or introduce evidence demonstrating that defendant exercised authority or control over the management of ERISA plan assets; (2) plaintiff was not entitled to a hearing prior to the dismissal of its breach-of-fiduciary-duty claim against defendant, as the record demonstrates that no hearing was necessary and plaintiff did not request one; and (3) the District Court erred in holding that defendant was not personally liable for certain dishonored checks under New York's Uniform Commercial Code, where plaintiff established that the checks did not indicate that defendant signed them in a representative capacity and defendant presented no evidence of an understanding between the parties that he had signed them in a representative capacity.

Affirmed insofar as the District Court held that defendant was not an ERISA fiduciary, and insofar as the District Court did not conduct a hearing before dismissing the breach of fiduciary claim; reversed insofar as the District Court held that defendant was not personally liable for the dishonored checks.

> JAMES R. GRISI (Jani K. Rachelson, Robin H. Gise, *of counsel*, and Molly A. Brooks, *on the brief*), Cohen, Weiss and Simon LLP, *for Appellant Gerald Finkel*.[**]

---

[**] No attorney has entered an appearance on behalf of defendant-appellee Joseph Romanowicz, and he has not filed a brief in this case.

JOSÉ A. CABRANES, *Circuit Judge*:

Plaintiff-appellant Gerald Finkel, as Chairman of the Joint Industry Board of Electrical Industry (the "Joint Board"), challenges a May 14, 2007 default judgment entered by the United States District Court for the Eastern District of New York (John Gleeson, *Judge*) against Whiffen Electric Co., Inc, ("Whiffen") pursuant to sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, for delinquent contributions of employee benefits but dismissing the Joint Board's claims against defendant-appellee Joseph Romanowicz, a principal of Whiffen. *See Finkel v. Whiffen Elec. Co.*, No. 06-1269, 2007 WL 1395562, at *2 (E.D.N.Y. May 14, 2007). In this appeal, we consider whether (1) Romanowicz was a "fiduciary" of an ERISA benefits plan within the meaning of 29 U.S.C. § 1002(21)(A), so that he may be held jointly and severally liable for the delinquent payments; (2) the District Court erred in not conducting a hearing before dismissing the Joint Board's breach-of-fiduciary-duty claim; and (3) Romanowicz is, under section 3-403(2)(b) of New York's Uniform Commercial Code ("N.Y. U.C.C."), personally liable for dishonored checks tendered to the Joint Board by Romanowicz to meet a portion of Whiffen's obligations for employee benefit contributions.

## BACKGROUND[1]

The Joint Board is an administrator and fiduciary of several ERISA employee-benefit funds established by collective bargaining agreements between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO ("the Union") and employers supplying electrical

---

[1] Romanowicz failed to oppose the Joint Board's suit and is therefore deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Our "background" section is, accordingly, drawn from the Joint Board's allegations and submissions to the District Court.

services. Whiffen was one such employer at all points relevant to this litigation. Pursuant to one of these collective bargaining agreements with the Union (the "CBA"), Whiffen was obligated to withhold specified portions of employees' wages and, on a monthly basis, remit them to the Joint Board for deposit in several ERISA funds, including a multi-employer cash or deferred arrangement within the meaning of Internal Revenue Code § 401(k), 26 U.S.C. § 401(k) ("the 401(k) Plan").

In September 2004 the Joint Board received two checks from Whiffen bearing Romanowicz's signature, one in the amount of $19,048.48 and the other for $7,383.47, conveyed in accordance with the CBA's terms. However, each was dishonored and returned to the Joint Board due to insufficient funds. In August 2005, the Joint Board received another check from Whiffen, again signed by Romanowicz, this time in the amount of $9,572.98. As with the previous checks, the August 2005 check was dishonored. From August 3, 2005 through October 12, 2005, Whiffen failed to make payments required under the CBA to various ERISA funds administered by the Joint Board. Similarly, from July 6, 2005 through October 12, 2005, Whiffen failed to remit required contributions to the 401(k) Plan.

In March 2006, the Joint Board filed suit against Whiffen and Ramonowicz, alleging that, in violation of 29 U.S.C. § 1145, each had failed to remit timely contributions to the 401(k) Plan and other ERISA plans administered by the Joint Board.[2] The Joint Board sought to recover from Whiffen all funds withheld from the 401(k) Plan and other funds owed for the period from August

---

[2] Title 29 U.S.C. § 1145 provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

4

3, 2005 to October 12, 2005.[3] It also sought to impose joint and several liability against Whiffen and Romanowicz for delinquent contributions to the 401(k) Plan under the theory that Romanowicz had withheld contributions in breach of a fiduciary duty.[4] Further, the Joint Board averred that, under section 3-403(2)(b) of the N.Y. U.C.C., Romanowicz was personally liable for the dishonored checks.[5]

---

[3] The Joint Board sued Whiffen under 29 U.S.C. § 1132, which provides that an ERISA fiduciary, such as the Joint Board, may bring a civil action to recover contributions withheld from an ERISA plan. Title 29 U.S.C. § 1132 states, in relevant part:

> (a) Persons empowered to bring a civil action[.] A civil action may be brought . . .(3) by [an ERISA plan] participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

[4] Under 29 U.S.C. § 1109, a fiduciary of an ERISA plan may be personally liable for a breach of a duty owed to the plan. That section provides, in relevant part:

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

[5] N.Y. U.C.C. § 3-403 provides:

> (1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

> (2) An authorized representative who signs his own name to an instrument

> (a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

> (b) except as otherwise established between the immediate parties, is personally obligated if

Neither Whiffen nor Romanowicz responded to the complaint or otherwise appeared before the District Court to defend the lawsuit brought by the Joint Board. On June 9, 2006, the Joint Board requested that the Clerk of the Court enter defendants' default pursuant to Rule 55 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). On the same day, the Joint Board moved for a default judgment against both defendants, arguing that further briefing was not necessary to establish defendants' liability because entry of judgment in their favor would "require[] no findings of fact and there are no disputed questions of law." J.A. 7 (motion for default judgment); *see also* Fed. R. Civ. P. 55(b)(2) (noting that a district court "may conduct hearings or make referrals . . . to enter or effectuate [a default] judgment").

The District Court noted defendants' default and referred the matter to Magistrate Judge Steven M. Gold to recommend an award of damages. Whiffen and Romanowicz again failed to respond to the Joint Board's allegations.[6] After reviewing the complaint and documents submitted by the Joint Board, the Magistrate Judge concluded that the Joint Board had established Whiffen's

---

the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

(3) Except as otherwise established, the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity.

[6] Although a court accepts as true all well pleaded allegations against a defaulting defendant for purposes of determining liability, a default is not an admission of damages, which must be established in a separate evidentiary proceeding. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. Even where a party has defaulted, it may still contest the amount of damages awarded to a plaintiff. *Id.* In this case, no evidentiary hearing was necessary to establish damages because the Joint Board did not ask for one but instead submitted documentary evidence of damages. Neither Whiffen nor Romanowicz submitted any response in opposition.

liability for unpaid contributions to the 401(k) Plan and other benefit funds and recommended an award of $12,341.58 for unpaid contributions to the 401(k) Plan and $106,102.34 for unpaid contributions to other funds. Magistrate Judge Gold also recommended an award of $8,493.95 in interest, $8,493.95 in liquidated damages, and $7,670.28 in attorneys' fees and costs. *See* 29 U.S.C. § 1132(g)(2) (authorizing awards of unpaid contributions, interest, attorney's fees and costs, and "other legal or equitable relief").

Magistrate Judge Gold recommended dismissal of the Joint Board's claims against Romanowicz. First, the Magistrate Judge concluded that the Joint Board had failed to make out a *prima facie* case for breach of fiduciary duty against Romanowicz because it had not established that he was a fiduciary of the 401(k) Plan. Second, Magistrate Judge Gold reasoned that Romanowicz was not personally liable under the N.Y. U.C.C. for the dishonored checks because, in the Magistrate Judge's view, the parties "likely" understood that Romanowicz signed them in a representative capacity, J.A. 228 (Report and Recommendation), and that the Joint Board had "offered no evidence, nor made any assertions of fact, suggesting there was not such [an understanding]," *id.* at 229.

Over the Joint Board's timely objection, the District Court adopted Magistrate Judge Gold's Report and Recommendation, holding that the Joint Board had failed to establish Romanowicz's alleged fiduciary status because the Board did not demonstrate Romanowicz's exercise of authority over 401(k) Plan assets. *See Finkel*, 2007 WL 1395562 at *1. After noting that the Joint Board characterized Magistrate Judge Gold's second conclusion as "clearly erroneous," the District Court agreed with the Magistrate Judge's finding that the parties understood Romanowicz to have signed the dishonored checks in a representative capacity. *See id.* at *2.

This timely appeal followed.

7

**DISCUSSION**

On appeal, the Joint Board argues that the District Court erred in (1) holding that Romanowicz was not a fiduciary of the 401(k) Plan, (2) failing to conduct a hearing prior to dismissing the breach-of-fiduciary-duty claim, and (3) holding that, under the N.Y. U.C.C., Romanowicz was not personally liable for the dishonored checks because he signed them in a representative capacity.

In light of Romanowicz's default, a court is required to accept all of the Joint Board's factual allegations as true and draw all reasonable inferences in its favor, *see Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (noting that, where a party moves for a default judgment after another party's default, the moving party is "entitled to all reasonable inferences from the evidence offered"), but it is also required to determine whether the Joint Board's allegations establish Romanowicz's liability as a matter of law, *see id.* ("[A] district court retains discretion under [Federal Rule of Civil Procedure] 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action . . . .").

We review *de novo* a district court's application of law to undisputed facts, *see, e.g., In re New Times Sec. Servs., Inc.*, 463 F.3d 125, 127 (2d Cir. 2006), which in this case were established through the Joint Board's pleadings, submissions to the District Court, and Romanowicz's default.[7] *See*

---

[7] In a footnote, the Joint Board argues that remand is appropriate because, according to the Joint Board, the District Court failed to review *de novo* the Magistrate Judge's Report and Recommendation. *See* Appellant's Br. 20 n.4. The Joint Board's argument is grounded in the District Court's repeated use of the phrase "clearly erroneous." *See Finkel*, 2007 WL 1395562 at *2 ("Plaintiff objects that [the Magistrate Judge's] inference of the parties' likely past course of dealing was clearly erroneous. But the inference of the existence of past payments from Whiffen to the union was not clearly erroneous . . . . The further inference that those weekly payments usually took the form of checks signed by Romanowicz was not clearly erroneous either . . . ." (internal citations omitted)). The Joint Board is correct insofar as it observes that it was entitled to *de novo* review of the Magistrate Judge's Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) (providing that, except with respect to certain pretrial matters, "[a] judge of the court shall make a de novo

8

*LoPresti v. Terwilliger*, 126 F.3d 34, 39 (2d Cir. 1997) ("[W]here the facts are not in question, whether a party is an ERISA fiduciary is 'purely a question of law.'" (quoting *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1458 (9th Cir. 1995)).

**Fiduciary Duty**

Pursuant to 29 U.S.C. § 1145, *see* note 2, *ante*, where an employer has entered into a collective bargaining agreement requiring him to remit funds to an ERISA plan, the employer is obligated to "make such contributions in accordance with the terms and conditions of [the collective bargaining] agreement." If an employer fails to make required contributions, a fiduciary of the plan may sue the employer, or another fiduciary of the plan, as that term is defined under ERISA, to recover the unpaid contributions. *See* 29 U.S.C. §§ 1132, 1109; notes 3 & 4, *ante*. In turn, ERISA provides alternative definitions of "fiduciary." For example, ERISA provides that a fiduciary is someone who "exercises any discretionary authority or discretionary control respecting management of [an ERISA benefit] plan *or* exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i) (emphasis added).

In this case, the Joint Board alleged that employees' elective contributions to the 401(k) Plan "were withheld from employees' wages and . . . maintained by [Romanowicz and Whiffen] as part of [Whiffen's] general assets for the benefit of Romanowicz and [Whiffen], rather than being remitted to the [401(k)] Plan." J.A. 15 (Complaint at ¶ 32). With respect to his role in withholding and failing to remit wages, the Joint Board alleged that "Romanowicz, *by virtue of his position as an officer of [Whiffen]*, exercised control over [Whiffen] assets, including the general assets with which withheld

---

determination of those portions of a [magistrate judge's] report or specified proposed findings or recommendations to which objection is made"). However, even if we assume for the sake of argument that the District Court applied the wrong standard of review, our own *de novo* review of the record and the District Court's application of law to the facts of this case, which are undisputed in light of Romanowicz's default, obviates the need for a remand.

9

contributions [were] commingled, failed to advise participants or employees of [Whiffen] that [Whiffen and Romanowicz] had failed and refused to remit the withheld contributions to the [401(k)] Plan." J.A. 15 (Complaint at ¶ 35) (emphasis added). Based on these allegations, the Joint Board concluded that "Romanowicz exercised authority or control over Plan assets. Thus, Romanowicz [was a] fiduciar[y] of the Plan within the meaning of § 1002(21)(A)(i)." J.A. 16 (Complaint at ¶ 36). Similarly, in its objection to the Magistrate Judge's recommendation that its breach-of-fiduciary-duty claim be dismissed, the Joint Board alleged that "[a]s the principal of Whiffen, Romanowicz withheld Employee Elective Contributions from employee paychecks" and did not make required contributions to the 401(k) Plan. J.A. 234.

In dismissing the action against Romanowicz, the District Court reasoned that, under § 1145, Whiffen was obligated to remit withheld employee wages to the Joint Board for deposit in the 401(k) Plan and that the funds withheld from the 401(k) Plan were "assets" within the meaning of § 1002(21)(A)(i).[8] However, the District Court concluded that the Joint Board failed to allege that "(1) [Romanowicz] had the authority to determine which company bills to pay and when; or (2) he 'exercise[d]' that authority by using the money from the unpaid contributions for company payments." *Finkel*, 2007 WL 1395562 at *2 (quoting 29 U.S.C. § 1002(21)(A)(i)).

---

[8] Although Whiffen failed to remit withheld employee wages to the Joint Board for deposit in the 401(k) Plan, the District Court correctly concluded those funds nevertheless became "assets" of the plan within the meaning of § 1002(21)(A)(i). Pursuant to Department of Labor regulations, "the assets of [an ERISA] plan include amounts . . . that a participant has withheld from his wages by an employer[ ] for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets." 29 C.F.R. § 2510.3-102. The District Court's conclusion in this case was consistent with our recent decision in *In re Halpin*, 566 F.3d 286 (2d Cir. 2009). In *Halpin*, we held that an *employer's* contributions to an ERISA plan become plan assets only after they are paid to the plan. *Id.* at 290. Here, we consider an *employee's* contributions to an ERISA plan, which became plan assets when money was withheld from the employee's wages. *See Halpin*, 566 F.3d at 289 ("Although the Department of Labor . . . has officially issued a regulation that specifies when *employee* contributions become assets, . . . it has not issued formal rule governing when *employer* contributions become plan assets." (internal citations omitted)).

On appeal, the Joint Board presses the view that § 1002(21)(A)(i)'s description of a fiduciary as one who "exercises any authority or control respecting management or disposition of [ERISA plan] assets" accurately characterizes Romanowicz's role in administering the 401(k) Plan assets in this case. The Joint Board contends that, in omitting "discretionary" from this definition of fiduciary under § 1002(21)(A)(i), Congress intended to establish that an individual need only exercise minimal control over plan assets in order to be regarded as an ERISA fiduciary. In the Joint Board's view, the District Court erred in holding that under § 1002(21)(A)(i) an ERISA fiduciary must enjoy some discretionary authority over the disposition of company assets.

Although we have recognized that "Congress intended ERISA's definition of fiduciary to be broadly construed," *LoPresti*, 126 F.3d at 40 (internal quotation marks omitted), we have also concluded that "'management or disposition' . . . [of ERISA plan assets] refers to the common transactions in dealing with a pool of assets: selecting investments, exchanging one instrument or asset for another, and so on," *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28 (2d Cir. 2002) (internal quotation marks omitted)); *cf. Webster's Third New International Dictionary* (unabridged) 1372 (1976) (defining "management" to include "the act of *conducting or supervising* something (as a business); *esp*: the executive function of planning, organizing, coordinating, directing, and supervising any industrial or business project or activity with responsibility for results" (emphasis added)).

Contrary to the Joint Board's assertions, the District Court was not free to conclude that Romanowicz's status as an officer of Whiffen made him a fiduciary of the 401(k) Plan. *Cf. LoPresti*, 126 F.3d at 40 ("Unlike the common law definition under which fiduciary status is determined by virtue of the position a person holds, ERISA's definition is functional." (internal quotation marks omitted)). We have held that even where an individual (1) was an officer of a company, (2) was "authorized to sign checks on the Company's account," and (3) "had some general knowledge that

11

deductions were made from employees' wages," he still was not an ERISA fiduciary because he had "no responsibility for determining which of the company's creditors would be paid or in what order." *LoPresti*, 126 F.3d at 40 (internal quotation marks omitted).

Accepting all of the Joint Board's allegations in this case as true and drawing all inferences in its favor, we conclude that Romanowicz was simply an officer of Whiffen, that he signed checks on the company's behalf, and that he and Whiffen "maintained" plan assets "for the benefit of [Romanowicz and Whiffen]," J.A. 15 (Complaint at ¶ 32). The Joint Board has not alleged that Romanowicz "select[ed] investments" or "exchang[ed] one instrument for another." *Harris Trust & Sav. Bank*, 302 F.3d at 28. Nor has it alleged that he was "responsibil[e] for determining which of the company's creditors would be paid or in what order," *LoPresti*, 126 F.3d at 40 (internal quotation marks omitted), or otherwise enjoyed authority or control over the *management* of 401(k) Plan assets. In short, the Joint Board has not alleged that Romanowicz engaged in, or had the authority to engage in, any activities that would make him a fiduciary under § 1002(21)(A)(i)'s definition of that term.

In sum, the Joint Board's allegations are not sufficient to establish Romanowicz's status as a fiduciary.

**Hearing Prior to Dismissal**

The Joint Board's contention that the District Court erred in failing to conduct an evidentiary hearing prior to dismissing its breach-of-fiduciary-duty claim against Romanowicz is without merit. Under Rule 55(b) of the Federal Rules of Civil Procedure, where a party has applied for a default judgment, the "[district] court *may* conduct hearings or make referrals" in order to, among other things, "determine the amount of damages[,] establish the truth of any allegation by evidence[,] or investigate any other matter." Fed. R. Civ. P. 55(b)(2)(B-D) (emphasis added). In permitting, but not requiring, a district court to conduct a hearing before ruling on a default

12

judgment, Rule 55(b) commits this decision to the sound discretion of the district court. We therefore review the District Court's decision for "abuse of discretion." *See Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, . . . or rendered a decision that cannot be located within the range of permissible decisions." (internal quotation marks and citations omitted)).

The Joint Board asserts that the District Court erred inasmuch as it "*sua sponte*, undertook to analyze the substantive claims against Romanowicz without giving [the Joint Board] the opportunity to submit further evidence that would tend to show that Romanowicz acted as a fiduciary." Appellant's Br. 40. Our review of the record reveals that, notwithstanding its contention on appeal, the Joint Board never asked for a hearing, and one was not necessary. The Joint Board had ample opportunity to amend its complaint or supplement its allegations with evidence prior to moving for a default judgment against Romanowicz. In moving for default judgment, the Joint Board chose to rely on the allegations in its complaint as well as two declarations and seventeen exhibits that it submitted with its motion for a default judgment. The Joint Board not only failed to request a hearing but it assured the District Court that entry of a default judgment against Romanowicz would entail "no findings of fact or disputed questions of law." J.A. 7. Similarly, the Joint Board did not ask for a hearing on its objection to the Magistrate Judge's Report and Recommendation.

Following Romanowicz's default, there were no disputed issues of fact, and particularly in light of the Joint Board's failure to request a hearing, we have no trouble concluding that the District Court acted well within its discretion in proceeding without one.

**Personal Liability for Dishonored Checks**

Finally, we turn to the Joint Board's argument that the District Court erred in holding that

13

Romanowicz could not be liable for dishonored checks he signed on behalf of Whiffen.[9] Pursuant to section 3-403 of the N.Y. U.C.C., "[a]n authorized representative who signs his name to an instrument . . . except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity." N.Y. U.C.C. § 3-403(2)(b). As explained by the New York Court of Appeals, this rule "aims to foster certainty and definiteness in the law of commercial paper." *Rotuba Extruders, Inc. v. Ceppos*, 46 N.Y.2d 223, 228 (1978); *see also In re Golden Distrib., Ltd*, 134 B.R. 770, 774 (Bankr. S.D.N.Y. 1991) ("While [section 3-403(2)(b)] may seem harsh, the rule is in keeping with the general intent and purpose of the negotiable instrument law to protect holders in due course. Commercial paper must be permitted to be freely negotiable without undue risk." (internal quotation marks omitted)).

In this case, the Joint Board's complaint alleged, and our review of the record confirms, that the checks contain Whiffen's name, but "[t]he face of each of the dishonored checks does not disclose that Romanowicz signed the check in a representative capacity." J.A. 14 (Comp. ¶ 30). Even where, as here, the face of a check indicates that funds are drawn from a corporate account, the individual who signs the check may be personally liable under section 3-403 unless he specifically indicates that he is signing in a representative capacity. *See* N.Y. U.C.C. 3-403(2)(b).

Magistrate Judge Gold nevertheless recommended that the District Court hold that Romanowicz had signed in a representative capacity, based on the Magistrate Judge's observation that "it seems likely that the parties had 'otherwise established'" that Romanowicz was signing in his representative capacity. J.A. 228. The Magistrate Judge went on to note that the Joint Board had

---

[9] After the Joint Board filed its complaint, and prior to Whiffen's default, Whiffen covered the check in the amount of $19,048.48. Accordingly, only the remaining two checks, which totaled $ 16,956.45, were before the District Court as a possible basis for Romanowicz's personal liability.

"offered no evidence, nor made any assertions of fact, suggesting there was not such a course of dealing." J.A. 229. The District Court adopted Magistrate Judge Gold's recommendation, reasoning that Romanowicz's representative capacity was confirmed by the fact that "weekly payments [from Whiffen to the Joint Board] usually took the form of checks signed by Romanowicz." *Finkel*, 2007 WL 1395562 at *2.

The Joint Board argues that the party seeking to avoid personal liability under section 3-403(2)(b) bears the burden of establishing an understanding between the parties that he signed the checks solely in a representative capacity and that, in this case, Romanowicz failed to meet that burden. According to the Joint Board, the District Court *sua sponte* raised an affirmative defense on behalf of Romanowicz and erroneously placed a burden on the Joint Board to establish that he had not signed the instruments in a representative capacity. Further, the Joint Board argues that the District Court's finding of a "likely" understanding in the course of dealing between the Joint Board and Romanowicz amounted to an inference against it, in contravention of the rule that a court must draw all reasonable inferences in favor of the plaintiff where the defendant has defaulted. *See Au Bon Pain Corp.*, 653 F.2d at 65.

We agree with the Joint Board that, in this respect, the District Court erred as a matter of law. The District Court correctly noted that, under section 3-403(2)(b), a signatory of a dishonored check who failed to indicate on the face of the check that he signed in a representative capacity may escape personal liability where "there [is] an understanding, implicit in the course of dealing [between the parties,] that he was acting in a representative capacity." *See Finkel*, 2007 WL 13955562 at *2 (describing a holding of *In re Golden Distribs., Ltd.*, 134 B.R. at 774). However, this exception is an affirmative defense under New York law, and Romanowicz did not raise it. The New York Court of Appeals has held that "[t]o escape personal liability [under section 3-403(2)(b)], *the signer has the burden* to 'establish' an agreement, understanding or course of dealing to the contrary." *Rotuba*

15

*Extruders*, 46 N.Y.2d at 229 (emphasis added).  Unless the defendant makes "*an affirmative demonstration* that the taker of the note knew or understood that the signer intended to execute the instrument in a *representative status only*, there can be no defense that, notwithstanding the form of the note, representative liability was otherwise established between the parties." *Id.* (internal quotation mark and alteration omitted) (emphasis added); *see also Golden Distribs., Ltd. v. Garced*, 134 B.R. 766, 770 (Bankr. S.D.N.Y. 1991) (holding that an individual was personally liable under section 3-403(2)(b) where he failed to appear at his trial and thus failed to "demonstrate that there was an understanding, implicit in his course of dealing with [a company], that he was acting in a representative capacity").

## CONCLUSION

For reasons stated above, we AFFIRM the judgment of the District Court insofar as it (1) concluded that Romanowicz was not an ERISA fiduciary and thus was not jointly and severally liable for Whiffen's failure to remit timely contributions to the 401(k) fund and (2) did not hold a hearing prior to dismissing the Joint Board's breach-of-fiduciary-duty claim.  We REVERSE the judgment of the District Court insofar as it held that Romanowicz is not personally liable for the dishonored checks at issue pursuant to N.Y. U.C.C. § 3-403.  On remand, the District Court shall enter a default judgment in favor of the Joint Board with respect to the dishonored checks.  The District Court shall also calculate the amount of damages to reflect any payments by Whiffen or Romanowicz during the pendency of this litigation to satisfy the amounts owed therefrom.

Defendant-appellee Romanowicz shall bear the costs of this appeal.  *See* Fed. R. App. P. 39(a)(4).