Jario PINEDA, Emerito S. Alonzo, Jorje Jordan, Enrique Mendes, Manuel Perez, Demecio Ramos, Manuel DeJesus Ramos, Julio Villeda, and Vitalino Villeda, Plaintiffs,

v.

MASONRY CONSTRUCTION, INC., Carmody Building Corp., Carmody Masonry Corp., and Biagio "Bennie" Cantisani, Defendants.

No. 09 Civ. 2356 (RO).

United States District Court, S.D. New York.

Nov. 15, 2011.

Robert David Goodstein, Robert David Goodstein & Associates New Rochelle, NY, for Plaintiffs.

Anthony Joseph Pirrotti, Jr., Pirrotti Law Firm LLC, Scarsdale, NY, for Defendants.

## ORDER

OWEN, District Judge:

Plaintiffs brought this action under the Fair Labor Standard Act ("FLSA") and New York State Labor Law ("NYLL") against Defendants Masonry Construction, Inc. ("MCI"), Carmody Building Corp. ("CBC"), Carmody Masonry Corp. ("CMC"), and Biagio "Bennie" Cantisani (collectively "Defendants"). Plaintiffs worked for Defendants as manual laborers between January, 2003 and December, 2008. Plaintiffs bring the following claims: claims under the FLSA and NYLL for Defendants' failure to pay overtime wages; a claim under the NYLL for Defendants' failure to pay regular wages due and owing to them; a claim under the New York Business Corporation Law to inspect Defendants' books and records; and claims by individual Plaintiffs, Demecio Ramos ("D. Ramos") Manuel DeJesus Ramos ("M. Ramos"), and Julio Villeda ("J. Villeda") for breach of contract for Defendants' failure to satisfy "I.O.U.s" issued to them in lieu of regular wages.

## BACKGROUND

Plaintiffs commenced this action on March 13, 2009. On September 2, 2010, Judge Cathy Seibel struck Defendants' Answer because of Defendants' failure to comply with discovery orders. (Docket Entry No. 25.) After striking the Answer and indicating that judgment would be entered in favor of the Plaintiffs, Judge Seibel referred the case to Magistrate Judge Paul E. Davison for an inquest on damages. (Docket Entry No. 25–26.)

Magistrate Judge Davison issued a scheduling order related to the inquest on September 8, 2010, directing Plaintiffs to file proposed findings of facts and conclusions of law and directing Defendants to file a response to Plaintiffs' submissions. (Docket Entry No. 27.) Judge Davison's scheduling order provided that the inquest may be conducted "based solely upon the written submissions of the parties." Sched-

uling Order at 2. The order further directed the parties that if either party sought an evidentiary hearing on the damages issue, that the party "must set forth in its submission the reason why the inquest should not be conducted based upon the written submissions alone, including a description of what witnesses would be called to testify at a hearing and the nature of the evidence that would be submitted." *Id.*

Plaintiffs filed proposed findings of fact and conclusions of law, which were accompanied by affidavits from most of the claimants, and supporting documentation. (Docket Entry No, 30.) Defendants filed a response, in which they argued that two of the Plaintiffs had submitted third-party affidavits and that on this basis their submissions should be dismissed as inadequately supported (Docket Entry No. 33.) Defendants requested an evidentiary hearing, but did not identify any witnesses who would be testifying at such a hearing nor did they identify any evidence they would submit at a hearing.

Following a conference with the parties on February 24, 2011 and after considering the parties' arguments, Judge Davison scheduled an evidentiary hearing limited to the damages of the two plaintiffs for which the documentary submissions were inadequate to determine damages. After Plaintiffs' counsel notified Judge Davison that additional evidence in supports of damages for these two plaintiffs could not be provided because these plaintiffs were not currently in the United States, Judge Davison conducted the damages inquest based on the parties' written submissions.

On March 22, Judge Davison issued a Report and Recommendation (the "Report") in which he recommended that judgment be entered against Defendants in the total amount of $420,645.42. (Docket Entry No. 37.) As stated in the Report, this judgment consists of $221,142.45 in overtime wages, $190,590.97 in liquidated damages, and $8,912.00 in contract damages. Plaintiffs filed objections to the Report on April 8, 2011. (Docket Entry No. 38.) Defendants also filed objections to the Report on April 8, 2011. (Docket Entry No. 39.) On May 18, 2011, this case was transferred to this Court.

For the reasons set forth below, this Court concurs with the Report and Recommendation of Judge Davison.

## DISCUSSION

*Legal Standards*

■■■ United States Magistrate Judges hear dispositive motions and make proposed findings of fact and recommendations, generally in the form of a Report and Recommendation. District courts review those orders under a clearly erroneous or contrary to law standard of review. 28 U.S.C. § 636(b)(1)(A). In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where no timely objection has been made by either party, a district court need only find that "there is no clear error on the face of the record" in order to accept the Report and Recommendation. *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985) (citations omitted). In the event that a party files objections to the magistrate judge's recommendations, district courts conduct a *de novo* review of those matters to which a party filed an objection. *Id.* § 636(b)(1)(B), (C). *First Union Mortgage Corp. v. Smith,* 229 F.3d 992, 995 (10th Cir.2000).

■■■ A party may file "specific written objections," Fed R. Civ. P. 72(b), to a Magistrate Judge's proposed findings and recommendations, and in that case, the

district court has an obligation to make a *de novo* determination as to those portions of the Report and Recommendation to which objections were made. 28 U.S.C. § 636(b)(1). A district court judge, in making a *de novo* determination, is afforded discretion in the weight placed on proposed findings and recommendations. *See United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Objections to a Report and Recommendation are to be "specific and are to address only those portions of the proposed findings to which the party objects." *Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 381–82 (W.D.N.Y.1992). In the event a party's objections are conclusory or general, or simply reiterate original arguments, the district court reviews the Report and Recommendation for clear error.

### Claims

This Court has reviewed the Report, the objections to the Report made by both parties, the record, and applicable legal authorities. After doing so, the Court concludes that the Report is supported by both the record and the law.

### Unpaid Overtime Wages

■ Judge Davison properly determined that Defendants' default constitutes an admission of liability and was able to reasonably ascertain damages based on the documentary evidence submitted by Plaintiffs. The Report calculated overtime pay under the FLSA and NYLL by determining the employee's regular rate of pay for the relevant periods and the number of hours for which the employer is liable. Because Defendants failed to present any evidence regarding the wages earned or hours worked by Plaintiffs, Judge Davison properly found that Plaintiffs (with limited exceptions explained more fully) provided

sufficient evidence through affidavits based on their personal recollections.

As explained more fully in the Report, the following Plaintiffs is entitled to recover overtime wages as follows:

| | |
|---|---|
| Jario Pineda: | $46,418.75 |
| Demecio Ramos: | $14,865.00 |
| Julio Villeda: | $19,860.00 |
| Emerito S. Alonzo: | $41,943.75 |
| Vitalino Villeda: | $33,693.75 |
| Manuel Perez: | $21,970.00 |
| Jorje Jordan: | $42,391.20 |

The Court concurs with the findings of Magistrate Judge Davison that Plaintiffs M. Ramos and Mendes have failed to provide sufficient evidence to establish damages to a reasonable certainty. Accordingly, the claims for unpaid overtime made by these two plaintiffs are dismissed.

### Liquidated Damages

■ Judge Davison properly determined that Plaintiffs are entitled to recover liquidated damages under the FLSA in an amount equal to their unpaid overtime wages, and that Defendants' default results in a finding that they willfully violated state and federal labor laws. The Report considers both the FLSA and NYLL and the statutes of limitations under each in determining the liquidated damages that should be awarded to each Plaintiff.

As explained more fully in the Report, the following Plaintiffs are entitled to recover liquidated damages under the FLSA and NYLL as follows:

| | |
|---|---|
| Jario Pineda: | $39,472.19 |
| Demecio Ramos: | $17,242.50 |
| Julio Villeda: | $18,436.25 |
| Emerito S. Alonzo: | $34,568.44 |
| Vitalino Villeda: | $23,880.94 |
| Manuel Perez: | $17,978.50 |
| Jorje Jordan: | $39,012.15 |

The Court concurs with the findings of Magistrate Judge Davison that because the overtime wage claims of Plaintiffs M. Ramos and Mendes should be dismissed, these Plaintiffs are not entitled to recover liquidated damages.

## Dishonored Checks

■ Plaintiffs claim that Defendants issued checks that were subsequently dishonored by the bank from which they were drawn and that they are therefore entitled to damages equal to the face amount of each of the dishonored checks. Defendants' default in failing to answer the Complaint is an admission of its allegations, thus requiring Plaintiffs to provide no further evidence despite the fact that Plaintiffs have provided little evidence to prove that the checks were in fact dishonored. Plaintiffs, however, failed to assert a cause of action that would entitle them to recovery. NYLL § 652(1), cited by Plaintiff, mandates the payment of statutorily determined minimum wages and does not provide a means for recovery of the face value of the dishonored checks. Judge Davison further found that because Plaintiffs did not provide further evidence regarding the hours or pay periods associated with the dishonored checks, it was impossible to ascertain with reasonable certainty the amount of minimum wages in connection with the dishonored checks that Plaintiffs would be entitled to recover.

■ The Report concludes that Plaintiffs are not entitled to recover damages based on their claim that $75,067.19 in paychecks was dishonored by the bank from which they were drawn. In their objections to the Report, Defendants repeat several of their points made in Opposition to Plaintiff's Proposed Findings of Fact and Proposed Conclusions of Law, specifically that Plaintiffs have failed to identify proof that the allegedly dishonored checks were in fact dishonored by the bank from which they were drawn. Def. Objection at 5. Plaintiffs object to the Report's finding that they are not entitled to recovery on their dishonored checks claim. Their objections, however, fail to provide a basis to upset Judge Davison's findings.

Plaintiffs request, in the alternative, that they be granted leave to renew the inquest as to this issue. Specifically, Plaintiffs request the opportunity to present evidence regarding the number of hours worked for each of the pay periods in question. This request is hereby granted. Plaintiffs shall have thirty (30) days to demonstrate that they are able to provide documentary evidence that establishes, with sufficient certainty, the number of hours worked for each of the pay periods at issue.

## Breach of Contracts Claims

■ The Court concurs with the Report's findings that two of the Plaintiffs are entitled to recover breach of contract damages for Defendants' failure to pay on what Plaintiffs describe are "I.O.U.s" issued to Plaintiffs in lieu of regular wages, as follows:

| | |
|---|---|
| D. Ramos | $5,942.00 |
| J. Villedas: | $2,970.00 |

The breach of contract claim of M. Ramos is dismissed.

### Attorney's Fees

■ NYLL permits a successful Plaintiff to recover reasonable attorney's fees and costs. See N.Y. Lab. Law § 198. Plaintiffs' request that they be granted thirty days following entry of an order on damages in which to pursue attorney's fees is hereby granted. Plaintiffs shall submit any application for reasonable attorney's fees and costs within thirty (30) days of the date of this order. The application shall contain time records, description of attorney and/or other legal staff experience, and supporting documentation of all costs claimed. Defendants shall have fourteen (14) days to oppose such application.

## CONCLUSION

For the reasons explained above, this Court concurs with the Report and Recommendation of Judge Davison, in its entirety. Accordingly, judgment is entered against Defendants in the total amount of $420,645,42. If Plaintiffs seek to renew the inquest on the issue of the dishonored checks, they must demonstrate within thirty (30) days that they can provide evidence establishing with reasonable certainty the amount of minimum wages Plaintiffs are entitled to collect based on the dishonored checks. Plaintiffs shall also submit any attorney's fees and costs request within thirty (30) days of the date of this order. SO ORDERED.

## *REPORT AND RECOMMENDATION*

PAUL E. DAVISON, United States Magistrate Judge.

### TO: THE HONORABLE CATHY SEI-BEL, UNITED STATES DISTRICT JUDGE

### I. *INTRODUCTION*

On March 13, 2009, Plaintiffs commenced the instant action against Masonry Construction, Inc. ("MCI"), Carmody Building Corp. ("CBC"), Carmody Masonry Corp. ("CMC"), and Biagio "Bennie" Cantisani ("Cantisani") (collectively "Defendants"). Docket #1 (Complaint ("Compl.")). Plaintiffs are manual laborers who worked for Defendants between January 1, 2003 and December of 2008, and bring the present action pursuant to the Fair Labor Standards Act ("FLSA") and New York Stale Labor Law ("NYLL") for Defendants' failure to pay overtime wages. Plaintiffs also assert a claim under NYLL for Defendants' failure to pay regu-

lar wages due and owing to them. Plaintiffs Demecio Ramos ("D. Ramos"), Manuel DeJesus Ramos ("M. Ramos"), and Julio Villeda ("J. Villeda") also bring claims for breach of contract based upon Defendants' failure to satisfy "I.O.U.s" issued to them in lieu of regular wages. Additionally, all Defendants bring a claim pursuant to New York Business Corporation Law to inspect Defendants' books and records.

On September 2, 2010, the Court struck Defendants' Answer, Docket #7 (Answer), on account of Defendants' failure to comply with certain discovery orders. Docket #25. The Court indicated that it would enter judgment in favor of Plaintiffs, *id.*, and referred the matter to me for an inquest as to Plaintiffs' damages. Docket #26, Having completed the inquest, for the reasons set forth below, I respectfully recommend that the Court enter judgment against Defendants in the total amount of $420,645.42. This judgment consists of $221,142.45 in overtime wages, $190,590.97 in liquidated damages, and $8,912.00 in contract damages.[1]

### II. *DISCUSSION*

#### A. *Applicable Law*

##### 1. *Federal and State Labor Laws*

###### a. Unpaid Overtime Wages

FLSA and NYLL require employers to "compensate employees who work over forty hours per week with overtime pay at the rate of one and one-half times the regular rate." *Wong v. Hunda Glass Corp.*, 09 Civ. 4402(RLE), 2010 WL 2541698, *2, 2010 U.S. Dist. LEXIS 62653, *2 (S.D.N.Y. June 23, 2010) (*citing* 29 U.S.C. §§ 207(a)(1)). "Even when wages exceed the minimum prescribed by Con-

---

1. Because this matter has been referred to me for the limited purpose of determining Plaintiffs' damages, I have not analyzed and make no recommendation as to Plaintiffs' claim under New York Business Corporation Law to inspect Defendants' books and records.

gress, [employers] must respect the statutory policy of requiring the employer to pay one and one-half times the regularly hourly rate for all hours actually worked in excess of [forty]." *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 42, 65 S.Ct. 11, 89 L.Ed. 29 (1944). Under the FLSA, employees must raise claims for unpaid overtime within two years of a non-willful violation, or within three years of a willful violation. *See* 29 U.S.C. § 255(a). Under NYLL, employees have six years to raise claims for unpaid overtime wages. N.Y. Lab. Law § 663(1), (3).

 An employee bringing an action for unpaid overtime wages under the FLSA has the burden of proving that he performed work for which he was not properly compensated. *Grochowski v. Phoenix Constr., Ypsilon Constr. Corp.*, 318 F.3d 80, 87 (2d Cir.2003) (*quoting Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)). Employers are required to "make, keep, and preserve" records of employee wages, hours, and employment conditions. 29 U.S.C. § 211(c).[2] If an employer fails to keep such records, the plaintiff may meet his burden by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Grochowski*, 318 F.3d at 87. A plaintiff may do so solely through his own recollection. *See Doo Nam Yang v. ACBL Corp.*, 427 F.Supp.2d 327, 335 (S.D.N.Y.2005); *Zeng Liu v. Jen Chu Fashion Corp.*, 00 Civ. 4221(RJH)(AJP), 2004 WL 33412, *3, 2004 U.S. Dist. LEXIS 35, *3 (S.D.N.Y. Jan. 7, 2004) (where no documents are produced as a result of defendant's default, "plaintiff['s] recollection and esti-

mates of hours worked are presumed to be correct"). Once the plaintiff meets this burden, "[t]he burden then shifts to the employer to present evidence either of the precise wages paid or evidence to 'negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.'" *Doo Nam Yang v. ACBL Corp.*, 427 F.Supp.2d 327, 332, 335 (S.D.N.Y.2005) (*citing Anderson*, 328 U.S. at 688, 66 S.Ct. 1187).[3]

### b. Liquidated Damages

 In addition to unpaid overtime wages, employees may seek liquidated damages under FLSA and NYLL. Under the FLSA, an employee can be awarded liquidated damages in an additional amount equal to the unpaid overtime wages. 29 U.S.C. § 216(b). Like claims for unpaid overtime, claims for liquidated damages under the FLSA must be brought within two years of a non-willful violation, or within three years of a willful violation. 29 U.S.C. § 255(a). A violation is "willful" under the FLSA when the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited," *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 141 (2d Cir.1999), and the standard under NYLL "does not appreciably differ." *Moon v. Kwon*, 248 F.Supp.2d 201, 235 (S.D.N.Y. 2002). Where a default judgment is entered against a defendant under the FLSA, allegations that the violations were willful are deemed admitted. *See, e.g., Jin M. Cao v. Wu Liang Ye Lexington Restaurant, Inc.*, No. 08–CV–3725, 2010 WL

---

**2.** Similar record-keeping requirements exist under New York law. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.6.

**3.** NYLL incorporates a similar standard. *See Doo Nam Yang*, 427 F.Supp.2d at 332 n. 3 (*citing* New York Lab. Law § 196–a).

4159391, at *1, 2010 U.S. Dist. LEXIS 109373, at *1–2 (S.D.N.Y. Sept. 30, 2010).

Under NYLL, "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law," claims for liquidated damages may be asserted up to six years after the alleged violation. *See* N.Y. Lab. Law § 663(1), (3). NYLL entitles employees to liquidated damages at a rate of twenty-five percent of the unpaid overtime. N.Y. Lab. Law § 663(1).

### c. Unpaid Regular Wages

NYLL § 652(1) requires employers to pay statutorily-determined minimum wages. If an employee is paid by his employer less than the minimum wage to which he is entitled under NYLL § 652(1), the employee may recover the amount of any such underpayment, together with costs and reasonable attorney's fees. New York Lab. Law § 663(1), Moreover, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, the employee may recover an additional amount as liquidated damages equal to twenty-five percent of the total of such underpayments found to be due the employee. *Id.*

### 2. Default

■ When a defendant defaults, the court must accept all well-pleaded allegations in the complaint as true, except those pertaining to the amount of damages. Fed.R.Civ.P. 8(b)(6); *Finkel v. Romanowicz,* 577 F.3d 79, 83 n. 6 (2d Cir.2009). In order to ascertain the amount of damages, the court must conduct an inquiry sufficient to establish them to a "reasonable certainty," *Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir.1999), and documentary evidence can suffice in lieu of an evidentiary hearing. *Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 508 (2d Cir.1991). Proof of damages must be based upon admissible, authenti-

cated evidence. *House v. Kent Worldwide Machine Works, Inc.,* 359 Fed.Appx. 206 (2d Cir.2010).

### B. *The Inquest*

On September 8, 2010, I issued a scheduling order, Docket # 27 ("Scheduling Order"), directing Plaintiffs to file and serve proposed findings of fact and proposed conclusions of law, and directing Defendants, thereafter, to file and serve a response thereto. The Scheduling Order further provided:

> The Court hereby notifies the parties that it may conduct this inquest based solely upon the written submissions of the parties. *See Fustok v. ContiCommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir.1989). To the extent that any party seeks an evidentiary hearing on the issue of damages (or other monetary relief), such party must set forth in its submission the reason why the inquest should not be conducted based upon the written submissions alone, including a description of what witnesses would be called to testify at a hearing and the nature of the evidence that would be submitted.

*Id.* On November 12, 2010, Plaintiffs filed Proposed Findings of Fact and Conclusions of Law, accompanied by affidavits of most (though not all) of the claimants, together with certain other documentation. Docket # 30. Plaintiffs did not request an evidentiary hearing.

On January 24, 2011, Defendants filed a response. Docket # 33 (Affirmation in Opposition). In their response, Defendants pointed out that two of the Plaintiffs—Enrique Mendes ("Mendes") and M. Ramos—had not submitted first-party affidavits and urged that their claims be dismissed as inadequately supported. *Id.* at ¶¶ 9–11. Defendants also pointed out cer-

tain discrepancies in Plaintiffs' documentary submissions, and requested an evidentiary hearing at which Plaintiffs would "give sworn testimony under oath, subject to cross-examination by an attorney, so that whatever is awarded to them is what is just and fair and not what they claim in the papers submitted to the Court." *Id.* at ¶ 17. Defendants did not, however, identify any witnesses or other evidence that they would submit at a hearing.

On February 24, 2011, counsel appeared for a conference to address Defendants' objections. Following the conference, and after considering the arguments of counsel, I scheduled an evidentiary hearing limited to the claims of Mendes and M. Ramos, the two Plaintiffs who had not submitted their own affidavits. My order stated, in pertinent part:

> [T]he Court has determined that the documentary submissions before the Court are insufficient to ascertain the damages of Manuel DeJesus Ramos and Enrique Mendes to a reasonable certainty. Therefore, an evidentiary hearing is scheduled for March 15, 2011 at 2:30 p.m. regarding the damages of these parties. The evidentiary hearing is limited to the damages of Manuel DeJesus Ramos and Enrique Mendes, and inquiry into the damages of other parties will not be permitted.

Docket # 35. On March 14, 2011, Plaintiffs' counsel submitted a letter to the Court stating, in pertinent part, as follows:

> [I] request that the Hearing scheduled for Tuesday, March 15, 2011, be cancelled. I cannot produce additional evidence because my two (2) clients are not in the United States.

Docket # 36. Accordingly, 1 have conducted this inquest based on the written submissions of the parties.

### C. Recommendations As To Damages

Defendants' default constitutes an admission of liability, and I conclude that except where specifically indicated below—the documentary evidence submitted by Plaintiffs provides a sufficient basis from which the Court can reasonably ascertain damages.

#### 1. Unpaid Overtime Damages

Because Plaintiffs assert claims under both the FLSA and NYLL, relief is available under either statute. *See Wong v. Hunda Glass Corp.,* 09 Civ. 4402(RLE), 2010 WL 2541698, *1–3, 2010 U.S. Dist. LEXIS 62653, *4–6 (S.D.N.Y. June 23, 2010). Thus, I will employ NYLL for the purposes of unpaid overtime claims. NYLL's six-year statute of limitations covers all of Plaintiffs' overtime wage claims, except those pre-dating March 19, 2003.[4]

In calculating overtime pay under the FLSA and NYLL, the court must first determine the employee's regular rate of pay for the relevant periods. *See* 29 U.S.C. § 207(a)(1); 12 NYCRR § 142–2.2. The regular rate of pay is the hourly rate paid to the employee for a typical week. *See* 29 U.S.C. § 207(e); *Walling v. Youngerman–Reynolds Hardwood Co.,* 325 U.S. 419, 424, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945). After determining the hourly rate of overtime compensation, the court must

---

4. All Plaintiffs other than D. Ramos, J. Villeda, and M. Ramos assert claims for unpaid overtime dating back to January 1, 2003. Because the docket reflects that Defendants were served with the Complaint on March 20, 2009, however, Plaintiffs are only entitled to recover overtime pay dating back to March 19, 2003 under NYLL. Therefore, my analysis of damages disregards claims for overtime pay for the 77 days between January 1, 2003 and March 19, 2003. As such, when calculating claims of damages dating back to January 1, 2003, I have subtracted 10.5 weeks of salary to account for the 77 day period in question.

next determine the number of overtime hours for which the employer is liable. That, in turn, requires the court to determine the period of liability and the number of overtime hours that Plaintiffs worked during that relevant period.

Plaintiffs—apart from Mendes and M. Ramos, whom I address separately below—demonstrate each of the foregoing elements through affidavits that are based solely upon their individual recollections of the hours worked and the wages paid for the applicable time periods. Defendants have not presented any evidence regarding the wages earned or hours worked by Plaintiffs. Since Defendants have failed to produce such records, Plaintiffs may demonstrate damages by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Grochowski*, 318 F.3d at 87. It is well-settled that Plaintiffs may satisfy this burden solely through their own recollections. *See, e.g., Doo Nam Yang*, 427 F.Supp.2d at 335. As such, I conclude that the affidavits submitted by Plaintiffs, except where noted, constitute sufficient evidence regarding the wages

they received and the hours they worked during the applicable pay periods. *Id.*

Guided by these principles, I have set forth below my analysis of the overtime wages that should be awarded to each individual Plaintiff.

### a. Jario Pineda

Jario Pineda ("Pineda") claims that he worked fifteen (15) hours of overtime for every business week between January 1, 2003 and December 31, 2008.[5] Pineda claims that his hourly salary was $15.00 in 2003 and 2004, $18.00 in 2005, $22.00 in 2006, $25.00 in 2007, and $32.00 in 2008. Pineda claims that he was paid at his regular hourly rate in connection with the overtime work he performed between January 1, 2003 and December 31, 2008, and not at the rate of time-and-a-half, as required by FLSA and NYLL. As such, Pineda claims that he is entitled to recover fifty percent (50%) of his normal hourly salary with respect to each hour of overtime worked, I conclude that Pineda is entitled to recover the following overtime wages:

| Year | Hourly Rate | Unpaid Balance of Overtime Rate | Overtime Hours | Weekly Overtime Owed | Yearly Overtime Owed |
|---|---|---|---|---|---|
| 2003 | $15.00 | $7.50 | 15 | $112.50 | $4,443.75 [6] |
| 2004 | $15.00 | $7.50 | 15 | $112.50 | $5,625.00 |
| 2005 | $18.00 | $9.00 | 15 | $135.00 | $6,750.00 |
| 2006 | $22.00 | $11.00 | 15 | $165.00 | $8,250.00 |
| 2007 | $25.00 | $12.50 | 15 | $187.00 [7] | $9,350.00 |
| 2008 | $32.00 | $16.00 | 15 | $240.00 | $12,000.00 |
| | | | | **TOTAL** | **$46,418.75** |

5. Although the affidavits of the various Plaintiffs indicate that they worked "every week" for some period of years, thereby implying that each Plaintiff's damages are based upon a 52 week year, most of the figures provided by Plaintiffs are actually based upon a 50 week year. Where noted herein, some of the Plaintiffs' figures are based upon shorter work years.

6. This figure excludes $1,181.25 in overtime wages that pre-date March 19, 2003.

7. Should be $187.50. Here and elsewhere, I have not corrected computational errors which reduce the damages due to Plaintiffs on the theory that Plaintiffs' affidavits should not be read to support a greater award than what is requested therein.

#### b. Demecio Ramos

D. Ramos claims that he worked fifteen (15) hours of overtime every week between January 1, 2006 and the December 31, 2007. D. Ramos claims that his hourly salary was $17.00 in 2006 and $32.00 in 2007. D. Ramos claims that he was paid at his regular hourly rate in connection with the overtime work he performed in 2006 and 2007, and not at the rate of time-and-a-half, as required by FLSA and NYLL. As such, D. Ramos claims that he is entitled to recover fifty percent (50%) of his normal hourly salary with respect to each hour of overtime worked. I conclude that D. Ramos is entitled to recover the following overtime wages:

| Year | Hourly Rate | Unpaid Balance of Overtime Rate | Overtime Hours | Weekly Overtime Owed | Yearly Overtime Owed |
|------|-------------|--------------------------------|----------------|----------------------|----------------------|
| 2006 | $17.00 | $8.50 | 15 | $127.50 | $3,825.00 [8] |
| 2007 | $32.00 | $16.00 | 15 | $240.00 | $11,040.00 [9] |
| | | | | TOTAL | $14,865.00 |

#### c. Julio Villeda

J. Villeda claims that he worked fifteen (15) hours of overtime for every business week between January 1, 2005 and December 31, 2008. J. Villeda claims that his hourly salary was $13.00 from 2005 through 2007, and $15.00 in 2008. J. Villeda claims that he was paid at his regular hourly rate in connection with the overtime work he performed between January 1, 2005 and December 31, 2008, and not at the rate of time-and-a-half, as required by FLSA and NYLL. As such, J. Villeda claims that he is entitled to recover fifty percent (50%) of his normal hourly salary with respect to each hour of overtime worked. I conclude that J. Villeda is entitled to recover the following overtime wages:

| Year | Hourly Rate | Unpaid Balance of Overtime Rate | Overtime Hours | Weekly Overtime Owed | Yearly Overtime Owed |
|------|-------------|--------------------------------|----------------|----------------------|----------------------|
| 2005 | $13.00 | $6.50 | 15 | $97.50 | $4,485.00 [10] |
| 2006 | $13.00 | $6.50 | 15 | $97.50 | $4,485.00 |
| 2007 | $13.00 | $6.50 | 15 | $97.50 | $4,485.00 |
| 2008 | $15.00 | $7.50 | 15 | $112.50 | $5,625.00 |
| | | | | TOTAL | $19,860.00 |

#### d. Emerito S. Alonzo

Emerito S. Alonzo ("Alonzo") claims that he worked fifteen (15) hours of overtime for every business week between January 1, 2003 and December 31, 2008. Alonzo claims that his hourly salary was $15.00 in 2003, $17.00 in 2004 and 2005, $18.00 in 2006, $24.00 in 2007, and $26.00 in 2008. Alonzo claims that he was paid at his regular hourly rate in connection with the overtime work he performed between January 1, 2003 and December 31, 2008, and not at the rate of time-and-a-half, as required by FLSA and NYLL. As such, Alonzo claims that he is entitled to recover fifty percent (50%) of his normal hourly

8. This figure is based on a 30 week work year.

9. This figure is based on a 46 week work year.

10. This figure is based on a 46 week work year.

salary with respect to each hour of overtime worked. I conclude that Alonzo is entitled to recover the following overtime wages:

| Year | Hourly Rate | Unpaid Balance of Overtime Rate | Overtime Hours | Weekly Overtime Owed | Yearly Overtime Owed |
|------|-------------|--------------------------------|----------------|----------------------|----------------------|
| 2003 | $15.00 | $7.50 | 15 | $112.50 | $4,443.75 [11] |
| 2004 | $17.00 | $7.50 | 15 | $112.50 | $5,625.00 |
| 2005 | $17.00 | $8.50 | 15 | $127.50 | $6,375.00 |
| 2006 | $18.00 | $9.00 | 15 | $135.00 | $6,750.00 |
| 2007 | $24.00 | $12.00 | 15 | $180.00 | $9,000.00 |
| 2008 | $26.00 | $13.00 | 15 | $195.00 | $9,750.00 |
| | | | | **TOTAL** | **$41,943.75** |

#### e. Vitalino Villeda

Vitalino Villeda ("V. Villeda") claims that he worked fifteen (15) hours of overtime for every business week between January 1, 2003 and December 31, 2008. V. Villeda claims that his hourly salary was $15.00 in 2003 and 2004, and $18.00 between 2005 and 2008. V. Villeda claims that he was paid at his regular hourly rate in connection with the overtime work he performed between January 1, 2003 and December 31, 2008, and not at the rate of time-and-a-half, as required by FLSA and NYLL. As such, V. Villeda claims that he is entitled to recover fifty percent (50%) of his normal hourly salary with respect to each hour of overtime worked. I conclude that V. Villeda is entitled to recover the following overtime wages:

| Year | Hourly Rate | Unpaid Balance of Overtime Rate | Overtime Hours | Weekly Overtime Owed | Yearly Overtime Owed |
|------|-------------|--------------------------------|----------------|----------------------|----------------------|
| 2003 | $15.00 | $7.50 | 15 | $112.50 | $4,443.75 [12] |
| 2004 | $15.00 | $7.50 | 15 | $112.50 | $5,625.00 |
| 2005 | $18.00 | $9.00 | 15 | $135.00 | $6,750.00 |
| 2006 | $18.00 | $9.00 | 15 | $135.00 | $6,750.00 |
| 2007 | $18.00 | $9.00 | 15 | $135.00 | $6,750.00 |
| 2008 | $18.00 | $9.00 | 15 | $135.00 | $3,375.00 [13] |
| | | | | **TOTAL** | **$33,693.75** |

#### f. Manuel Perez

Manuel Perez ("Perez") claims that he worked eight (8) hours of overtime for every business week between January 1, 2003 and December 31, 2008. Perez claims that his hourly salary was $15.00 in 2003 and 2004, $17.00 in 2005 and 2006, $20.00 in 2007, and $29.00 in 2008. Perez claims that he was paid at his regular hourly rate in connection with the overtime work he performed between January 1, 2003 and December 31, 2008, and not at the rate of time-and-a-half, as required by FLSA and NYLL. As such, Perez claims that he is entitled to recover fifty percent (50%) of his normal hourly salary with respect to each hour of overtime worked.

11. This figure excludes $1,181.25 in overtime wages that pre-date March 19, 2003.

12. This figure excludes $1,181.25 in overtime wages that pre-date March 19, 2003.

13. This figure is based on a 25 week work year.

I conclude that Perez is entitled to recover the following overtime wages:

| Year | Hourly Rate | Unpaid Balance of Overtime Rate | Overtime Hours | Weekly Overtime Owed | Yearly Overtime Owed |
|------|-------------|--------------------------------|----------------|----------------------|----------------------|
| 2003 | $15.00 | $7.50 | 8 | $60.00 | $2,370.00 [14] |
| 2004 | $15.00 | $7.50 | 8 | $60.00 | $3,000.00 |
| 2005 | $17.00 | $8.50 | 8 | $68.00 | $3,400.00 |
| 2006 | $17.00 | $8.50 | 8 | $68.00 | $3,400.00 |
| 2007 | $20.00 | $10.00 | 8 | $80.00 | $4,000.00 |
| 2008 | $29.00 | $14.50 | 8 | $116.00 | $5,800.00 |
| | | | | TOTAL | $21,970.00 |

### g. Jorje Jordan

Jorje Jordan ("Jordan") claims that he worked fifteen (15) hours of overtime for every business week between January 1, 2003 and December 31, 2008. Jordan claims that his hourly salary was $15.00 in 2003, $17.00 in 2004, $12.00 in 2005, and $27.95 between 2006 and 2008. Jordan claims that he was paid at his regular hourly rate in connection with the overtime work he performed between January 1, 2003 and December 31, 2008, and not at the rate of time-and-a-half, as required by FLSA and NYLL. As such, Jordan claims that he is entitled to recover fifty percent (50%) of his normal hourly salary with respect to each hour of overtime worked. I conclude that Jordan is entitled to recover the following overtime wages:

| Year | Hourly Rate | Unpaid Balance of Overtime Rate | Overtime Hours | Weekly Overtime Owed | Yearly Overtime Owed |
|------|-------------|--------------------------------|----------------|----------------------|----------------------|
| 2003 | $15.00 | $7.50 | 15 | $112.50 | $900.00 [15] |
| 2004 | $17.00 | $8.50 | 15 | $127.50 | $6,375.00 |
| 2005 | $12.00 | $6.00 | 15 | $90.00 | $4,500.00 |
| 2006 | $27.95 | $13.98 | 15 | $209.70 | $10,485.00 |
| 2007 | $27.95 | $13.98 | 15 | $209.70 | $10,485.00 |
| 2008 | $27.95 | $13.98 | 15 | $209.70 | $9,646.20 [16] |
| | | | | TOTAL | $42,391.20 |

### h. Manuel DeJesus Ramos and Enrique Mendes

Neither M. Ramos nor Mendes have submitted affidavits in support of their claims for overtime pay. Instead, D. Ramos—who claims to be M. Ramos' brother—has submitted an affidavit in which he makes assertions regarding the hours worked and salary earned by M. Ramos. Similarly, non-party Alvaro Coronado ("Coronado")—who claims to be Mendes' brother—submits an affidavit in which he makes assertions regarding the hours worked and salary earned by Mendes. Both affidavits purport to be based upon the affiant's "own knowledge and upon documents contained within" their respec-

14. This figure excludes $630 in overtime wages that pre-date March 19, 2003.

15. This figure is based on an 8 week work year.

16. This figure is based upon a 46 week work year.

tive files. Defendants argue that M. Ramos' and Mendes' claims for overtime wages must be dismissed because they "fail to attach an Affidavit or proof in admissible form to support their claims."

"The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." *Flaherty v. Filardi*, No. 03 Civ. 2167(LTS)(HBP), 2007 WL 163112, at *5, 2007 U.S. Dist. LEXIS 4595, at *5 (S.D.N.Y. Jan. 24, 2007) (*quoting Searles v. First Fortis Life Ins. Co.*, 98 F.Supp.2d 456, 461 (S.D.N.Y.2000)). "The lack of certain specific details or arguably vague statements will not render the affidavit inadmissible, but affect the weight and credibility of the testimony, which have to be determined by the trier of fact at trial." *Flaherty*, No. 03 Civ. 2167 (LTSXHBP), 2007 WL 163112, at *5, 2007 U.S. Dist. LEXIS 4595, at *5 (*quoting Zakre v. Norddeutsche Landesbank Girozentrale*, 396 F.Supp.2d 483, 504 (S.D.N.Y.2005)).

The Second Circuit has explained that "a court may ... strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir.1999) (*abrogated on other grounds by Schnabel v. Abramson*, 232 F.3d 83 (2d Cir.2000)). For example, the *Hollander* court held that a district court had acted within its discretion by striking portions of an affidavit that the district court had described as "more resembling an adversarial memorandum than a *bona fide* affidavit." *Hollander*, 172 F.3d at 198 (emphasis in the original). A court may also "simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible." *Doe v. Nat'l Bd. of Podiatric Med. Examiners*, No. 03 Civ. 4034(RWS), 2004 WL 912599, at *4, 2004 U.S. Dist. LEXIS 7409, at *4 (S.D.N.Y. April 29, 2004).

Here, although I have determined that the affidavits submitted by the other Plaintiffs constitute sufficient evidence regarding the wages they received and the hours they worked, 1 conducted a hearing on February 24, 2011, at which counsel were invited to address the sufficiency of the third-party affidavits submitted on behalf of M. Ramos and Mendes, Docket # 34.[17] Following that hearing, I entered an order informing the parties that there was insufficient evidence before the Court to establish the damages of M. Ramos and Mendes to a reasonable certainty,[18] and scheduled an evidentiary hearing at which Plaintiffs

---

17. Although numerous courts have acknowledged that, in the absence of relevant employment records, an employee may rely on his own estimate of the wages earned and the hours worked based on his or her *own recollection*, see, e.g., Doo Nam Yang, 427 F.Supp.2d at 335; Zeng Liu, 00 Civ. 4221(RJH)(AJP), 2004 WL 33412, at *1, 2004 U.S. Dist. LEXIS 35, at *3, the Court is not aware of any authority that would permit an employee to make such a showing based upon estimates contained in third-party affidavits. The Court need not resolve this question for purposes of the present inquest, however, as I find the third-party affidavits at issue here to be insufficient to demonstrate the damages of M, Ramos and Mendes.

18. Coronado makes no attempt to substantiate the claim that his affidavit is based upon his "own knowledge" or documents contained within his files. For example, Coronado does not claim to have worked for any of the Defendants or to have observed any of the events at issue in this case, nor does he indicate how or why he would have come to possess documents regarding his brother's employment with Defendants. Coronado also fails to identify any of the documents he purports to rely upon. Because Coronado has not laid any foundation for the statements set forth in his affidavit—many of which are mere legal conclusions—I cannot conclude that a reasonable trier of fact would believe the he had personal knowledge of the matters

could present additional evidence. Docket # 35. Plaintiffs' counsel subsequently requested that the Court cancel this evidentiary hearing on the basis that he "cannot produce additional evidence because [M. Ramos and Mendes] are not in the United States." Docket # 36.[19]

Because Plaintiffs have failed to come forward with sufficient evidence of the hours worked and wages earned by M. Ramos and Mendes, their claims for unpaid overtime must be dismissed.

### 2. *Liquidated Damages*

■ Under the FLSA, Plaintiffs are entitled to recover liquidated damages in an amount equal to their unpaid overtime wages. 29 U.S.C. § 216(b). Under NYLL, Plaintiffs are entitled to recover twenty-five percent (25%) of the unpaid overtime as liquidated damages. N.Y. Lab. Law. § 663(1), (3). To the extent that Plaintiffs' FLSA and NYLL claims overlap, Plaintiffs may recover liquidated damages under both the state and federal statutes. *Jin M. Cao*, No. 08–CV–3725, 2010 WL 4159391, at *5–6, 2010 U.S. Dist. LEXIS 109373, at *15–16. Claims for liquidated damages under the FLSA must be

brought within three years of a willful violation. 29 U.S.C. § 255(a). Claims for liquidated damages under NYLL must be brought within six years of the violation. N.Y. Lab. Law §§ 663(1), (3). As noted above, Defendants' default in answering the Complaint results in a finding that they willfully violated state and federal labor laws, *Jin M. Cao*, No. 08–CV–3725, 2010 WL 4159391, at *1, 2010 U.S. Dist. LEXIS 109373, at *1–2, meaning that Plaintiffs may recover liquidated damages under the FLSA for claims arising on or after March 19, 2006. However, claims that arose prior to that date are time-barred under the FLSA's three-year statute of limitations. *Id.*[20] Similarly, claims that arose prior to March 19, 2003 are time-barred under NYLL's six-year statute of limitations. N.Y. Lab. Law § 663(1), (3).[21]

Guided by these principles, 1 have set forth below my analysis of the liquidated damages that should be awarded to each individual Plaintiff.

#### a. **Jario Pineda**

Pineda may recover liquidated damaged under the FLSA for unpaid overtime

---

set forth therein. *Flaherty*, No. 03 Civ. 2167(LTS)(HBP), 2007 WL 163112, at *2, 2007 U.S. Dist. LEXIS 4595, at *5. The affidavit of D. Ramos—insofar as it purports to establish the damages of M. Ramos—differs from the Coronado affidavit only in that D. Ramos also worked for the Defendants. I conclude that D. Ramos' affidavit—like Coronado's affidavit—is insufficient to establish his brother's damages. *Id.*

19. It is worth noting that the Court's February 24, 2011 order, Docket # 35, did not require Plaintiffs to produce M. Ramos and Mendes at the evidentiary hearing. Plaintiffs could have, but did not, produce D, Ramos, Coronado, or any other witnesses they believed could have substantiated the damages of M, Ramos and Mendes to a degree of reasonable certainty.

20. Many of the Plaintiffs seek liquidated damages under FLSA dating back to January 1,

2006. However, since Plaintiffs are only entitled to recover liquidated damages under FLSA dating back to March 19, 2006, my analysis of liquidated damages under FLSA disregards all claims of liquidated damages for the 77 days between January 1, 2006 and March 19, 2006. Therefore, when calculating claims of liquidated damages dating back to January 1, 2006, I have subtracted 10.5 weeks of salary to account for the 77 day period in question.

21. Since Plaintiffs' claims for overtime wages under NYLL are subject to the same statute of limitation applicable here, and because their claims for overtime wages have already been reduced as noted above, the Court calculates liquidated damages under NYLL by taking 25% of the amount awarded to each of the Plaintiffs, as set forth above.

earned between March 19, 2006 and December 31, 2008. Thus, Pineda is entitled to recover $6,517.50 for 2006,[22] $9,350.00 for 2007, and $12,000 for 2008—or a total of $27,867.50. Pineda is also entitled to recover twenty-five percent of the overtime wages awarded to him under NYLL, or $11,604.69. Therefore, the total amount of liquidated damages that should be awarded to Pineda under the FLSA and NYLL is $39,472.19.

### b. Demecio Ramos

D. Ramos may recover liquidated damaged under the FLSA for unpaid overtime earned between March 19, 2006 and December 31, 2007. Thus, D. Ramos is entitled to recover $2,486.25 for 2006[23] and $11,040.00 for 2007—or a total of $13,526.25. D. Ramos is also entitled to recover twenty-five percent of the overtime wages awarded to him under NYLL, or $3,716.25. Therefore, the total amount of liquidated damages that should be awarded to D. Ramos under the FLSA and NYLL is $17,242.50.

### c. Julio Villeda

J. Villeda may recover liquidated damaged under the FLSA for unpaid overtime earned between March 19, 2006 and December 31, 2008, Thus, J. Villeda is entitled to recover $3,461.25 for 2006,[24] $4,485.00 for 2007, and $5,625.00 for 2008—or a total of $13,571.25. J. Villeda is also entitled to recover twenty-five percent of the overtime wages awarded to him under NYLL, or $4,965.00. Therefore, the

total amount of liquidated damages that should be awarded to J. Villeda under the FLSA and NYLL is $18,436.25.

### d. Emerito S. Alonzo

Alonzo may recover liquidated damaged under the FLSA for unpaid overtime earned between March 19, 2006 and December 31, 2008. Thus, Alonzo is entitled to recover $5,332.50 for 2006,[25] $9,000 for 2007, and $9,750.00 for 2008—or a total of $24,082.50. Alonzo is also entitled to recover twenty-five percent of the overtime wages awarded to him under NYLL, or $10,485.94. Therefore, the total amount of liquidated damages that should be awarded to Alonzo under the FLSA and NYLL is $34,568.44.

### e. Vitalino Villeda

V. Villeda may recover liquidated damaged under the FLSA for unpaid overtime earned between March 19, 2006 and December 31, 2008. Thus, V. Villeda is entitled to recover $5,332.50 for 2006,[26] $6,750.00 for 2007, and $3,375.00 for 2008—or a total of $15,457.50. V. Villeda is also entitled to recover twenty-five percent of the overtime wages awarded to him under NYLL, or $8,423.44. Therefore, the total amount of liquidated damages that should be awarded to V. Villeda under the FLSA and NYLL is $23,880.94.

### f. Manuel Perez

Perez may recover liquidated damaged under the FLSA for unpaid overtime earned between March 19, 2006 and De-

---

22. This figure excludes $1,732.50 in wages pre-dating March 19, 2006 that are unrecoverable under the FLSA.

23. This figure excludes $1,338.75 in wages pre-dating March 19, 2006 that are unrecoverable under the FLSA.

24. This figure excludes $1,023.75 in wages pre-dating March 19, 2006 that are unrecoverable under the FLSA.

25. This figure excludes $1,417.50 in wages pre-dating March 19, 2006 that are unrecoverable under the FLSA.

26. This figure excludes $1,417.50 in wages pre-dating March 19, 2006 that are unrecoverable under the FLSA.

cember 31, 2008. Thus, Perez is entitled to recover $2,686.00 for 2006,[27] $4,000.00 for 2007, and $5,800.00 for 2008 or a total of $12,486.00. Perez is also entitled to recover twenty-five percent of the overtime wages awarded to him under NYLL, or $5,492.50. Therefore, the total amount of liquidated damages that should be awarded to Perez under the FLSA and NYLL is $17,978.50.

### g. Jorje Jordan

Jordan may recover liquidated damaged under the FLSA for unpaid overtime earned between March 19, 2006 and December 31, 2008. Thus, Jordan is entitled to recover $8,283.15 for 2006,[28] $10,485.00 for 2007, and $9,646.20 for 2008—or a total of $28,414.35. Jordan is also entitled to recover twenty-five percent of the overtime wages awarded to him under NYLL, or $ 10,597.80. Therefore, the total amount of liquidated damages that should be awarded to Jordan under the FLSA and NYLL is $39,012.15,

### h. Manuel DeJesus Ramos and Enrique Mendes

Because I recommend that M. Ramos' and Mendez's claim for overtime wages be dismissed, they should not be entitled to recover liquidated damages.

### 3. *Dishonored Checks*

Plaintiffs claim that Defendants issued a total of $75,067.19 in paychecks that were subsequently dishonored by the bank from which they were drawn. Plaintiffs assert that they are entitled to recover the face

amount for each of the dishonored checks pursuant to NYLL § 652(1).

As an initial matter, Defendants argue that Plaintiffs have not presented any admissible evidence that the checks at issue were dishonored. Indeed, there is nothing on the face of the checks to indicate that they were dishonored, and Plaintiffs have provided the Court with no additional evidence, other than their own affidavits, to demonstrate that the checks were dishonored. However, Plaintiffs allege in the Complaint that they received paychecks from Defendants that were dishonored by the bank from which they were drawn. Plaintiffs attached to the Complaint copies of the allegedly dishonored checks. Defendants' default in answering the Complaint is equivalent to an admission of the allegations set forth in therein—including the allegation that the checks attached to the Complaint were dishonored. *Finkel,* 577 F.3d at 83 n. 6. Therefore, Plaintiffs are not required to come forward with additional evidence on that issue. *Id.; see also* Fed.R.Civ.P. 8(b)(6).

Plaintiffs are mistaken, however, in claiming that NYLL § 652(1) entitles them to recover the face value for each of the dishonored checks at issue. NYLL § 652(1) mandates the payment of statutorily determined minimum wages. New York Lab. Law § 652(1). It does not impose liability upon an employer for issuing dishonored checks. *Id.* Although Plaintiffs could have pursued the face value of the dishonored checks under any number of legal theories,[29] they have failed to do so.

---

**27.** This figure excludes $714.00 in wages predating March 19, 2006 that are unrecoverable under the FLSA.

**28.** This figure excludes $1,732.50 in wages pre-dating March 19, 2006 that are unrecoverable under the FLSA.

**29.** Plaintiffs could have asserted, for example, a claim for maker or indorser liability under

Article 3 of New York's Uniform Commercial Code, *see* N.Y. U.C.C. §§ 3–413 and 3–414, or common law claims for breach of contract and unjust enrichment. Although Defendants' default operates as an admission of liability under the legal theories set forth in the Complaint, the default cannot give rise to liability under other legal theories. *See* Fed. R.Civ.P. 54(c) (a "judgment by default shall

As such, Plaintiffs have failed to assert any cause of action that would entitle them to recover the face value of the dishonored checks.

In the absence of such a claim, the Court must construe Plaintiffs' NYLL § 652(1) claim as seeking to recover minimum wages for the pay periods in question, rather than the face value of the dishonored checks. However, Plaintiffs have not provided the Court with evidence sufficient to determine damages pursuant to NYLL § 652(1), Indeed, the vast majority of the dishonored checks at issue do not indicate how many hours Plaintiffs worked with respect thereto, or what pay period the dishonored checks represent. Without this critical information, the Court is unable to determine with reasonable certainty the amount of minimum wages Plaintiffs are entitled to receive under NYLL § 652(1) in connection with the dishonored checks. Accordingly, Plaintiffs' claim for damages under NYLL § 652(1), and for related liquidated damages under NYLL § 198, should be dismissed. Alternatively, the Court may grant Plaintiffs leave to renew this inquest in the event they are able to present evidence regarding the number of hours worked for each of the pay periods in question.

### 4. Breach of Contract Claims Based Upon Unpaid I.O.U.s

D. Ramos, J. Villedas, and M. Ramos claim that Defendants failed to satisfy what they describe as "I.O.U.s" issued to them by Defendants in lieu of regular wages, and that this failure to pay constitutes a breach of contract. Defendants' default constitutes an admission of liability as to these claims. Fed.R.Civ.P. 8(b)(6); *Finkel,* 577 F.3d at 83 n. 6. D. Ramos has presented the Court with a copy of the

not be different in kind from or exceed in amount that prayed for in the demand for

"I.O.U." issued to him by Defendants, the outstanding amount of which is $5,942.00. J. Villedas has also presented the Court with a copy of the "I.O.U." issued to him by Defendants, the outstanding amount of which is $2,970.00. These "I.O.U.s," together with the affidavits of D. Ramos and J. Villedas, provide the Court with reasonable certainty regarding their respective damages thereunder. *Credit Lyonnais Sec. (USA), Inc.,* 183 F.3d at 155. Accordingly, D. Ramos should be awarded $5,942.00 pursuant to the "I.O.U." issued to him, and J. Villedas should be awarded $2,970.00 pursuant to the "I.O.U." issued to him.

Although M. Ramos has not submitted an affidavit to the Court in connection with this inquest, D. Ramos has submitted an affidavit on his behalf in which he claims (1) that Defendants issued an "I.O.U." to M. Ramos in the amount of $9,875.00, and (2) that Defendants never made payment thereon. D. Ramos also attaches to his affidavit a copy of the "I.O.U." allegedly issued to M. Ramos. For the reasons stated above, *see supra* Section II.C.1.h, I conclude that this third-party affidavit is insufficient to establish M. Ramos' damages. Accordingly, M. Ramos' claim pursuant to the "I.O.U." should be dismissed.

### D. Joint and Several Liability

■ Plaintiffs allege that MCI, CBC, and CMC are "nominally separate entities who are part of a single integrated enterprise having common ownership and/or management and which formed a single employer of Plaintiffs." Compl. ¶ 6. Plaintiffs further allege that Castisani "was an owner, partner, or manager" of CMC, *id.* at 4, and that "Defendants" are liable on

judgment").

each of the causes of action set forth in the Complaint. Such allegations, coupled with Defendants' default, suffice to establish that MCI, CBC, CMC, and Castisani qualify as Plaintiffs' "employer" for purposes of FLSA and NYLL, and therefore to impose joint and several liability on each of them for their respective violations of the wage laws. *See Shim v. Millennium Group, LLC,* No. 08–CV–4022 (FB)(VVP), 2010 WL 409949, at *1, 2010 U.S. Dist. LEXIS 6407, at *2 (E.D.N.Y. Jan. 27, 2010) (on default judgment, finding both individual defendants and corporation liable under FLSA where complaint contained allegations of actions taken collectively by "Defendants"); *Moon v. Kwon,* 248 F.Supp.2d 201, 237 (S.D.N.Y.2002) (holding that corporate officer who is considered an employer under FLSA jointly and severally liable along with the corporation); *Ting Yao Lin v. Hayashi Ya II, Inc.,* 08 Civ. 6071(SAS)(AJP), 2009 WL 289653, *8–10, 2009 U.S. Dist. LEXIS 12963, *29–33 (S.D.N.Y. Jan. 30, 2009) (imposing joint and several liability pursuant to both FLSA and NYLL).

## IV. *Attorney's Fees*

Both the FLSA and NYLL permit a prevailing employee to recover reasonable attorney's fees from the employer. 29 U.S.C. § 216(b); New York, Lab. Law § 198. Plaintiffs have requested thirty (30) days following entry of an order on damages in which to pursue attorney's fees. I recommend that, upon entry of an order on the issue of damages, Plaintiffs be granted thirty (30) days' leave to file a motion for attorney's fees.

## V. *Conclusion*

For the foregoing reasons, I respectfully recommend that damages be awarded against Defendants, jointly and severally, in the amount of $420,645.42,[30] as follows:

A. **OVERTIME WAGES** in the total amount of **$221,142.45,** to be distributed among Plaintiffs as follows:
 1. $46,418.75—Pineda
 2. $14,865.00—D. Ramos
 3. $19,860.00—J. Villeda
 4. $41, 943.75—Alonzo
 5. $33,693.75—V. Villeda
 6. $21,970.00—Perez
 7. $42,391.20—Jordan

B. **LIQUIDATED DAMAGES** in the total amount of **$190,590.97,** to be distributed among Plaintiffs as follows:
 1. $39,472.19—Pineda
 2. $17,242.50—D. Ramos
 3. $18,436.25—J. Villeda
 4. $34,568.44—Alonzo
 5. $23,880.94—V. Villeda
 6. $17,978.50—Perez
 7. $39,012.15—Jordan

C. **CONTRACT DAMAGES** in the total amount of **$8,912.00** based upon Defendants' failure to make payment upon outstanding "I.O.U.s," to be distributed among Plaintiffs as follows:
 1. $5,942.00—D. Ramos
 2. $2,970.00—J. Villeda

---

**30.** Notwithstanding my instruction that Plaintiffs "succinctly summarize[ ] what amount(s) of damages (or other monetary relief) are being sought, including the exact dollar amount(s) being sought," Docket # 27 (Scheduling Order for Inquest), Plaintiffs' Proposed Findings of Fact and Proposed Findings of Law Concerning Damages does not make any reference to payment of interest. Docket # 30. (The affidavits of certain Plaintiffs assert an entitlement to interest upon certain claims, but do not indicate the applicable interest rate or rely upon any supporting authority.) Therefore, I do not address whether Plaintiffs are entitled to interest in connection with the award of damages recommended herein.

I recommend that the claims of M. Ramos and Mendes be **DISMISSED.**

I recommend that Plaintiffs' claims pursuant to NYLL § 652(1) be **DISMISSED,** or, in the alternative, that they be granted leave to renew this inquest upon submission of appropriate evidence.

I recommend that, upon entry of an order awarding damages, Plaintiffs be granted thirty (30) days leave to file a motion for attorney's fees.

## VI. *Notice*

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed.R.Civ.P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R.Civ.P. 6(d), or a total of seventeen (17) working days, from the date hereof to file written objections to this Report and Recommendation. Fed.R.Civ.P. 6(a). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Cathy Seibel, United States District Judge, at the Hon. Charles L. Brieant Jr. Federal Building and United States Courthouse, 300 Quarropas St., White Plains, N.Y. 10601–4150, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Seibel.

March 22, 2011

